**NEIGHBORHOOD TOXIC CLEANUP EMERGENCY, an unincorporated association of citizens, Plaintiff,**

v.

**William K. REILLY, in his official capacity as Administrator of the United States Environmental Protection Agency, Christopher J. Daggett, in his official capacity as Director of the New Jersey Department of Environmental Protection; and Canonie Environmental Services Corp., Defendants.**

Civ. A. No. 89–2578 (SSB).

United States District Court,
D. New Jersey.

July 5, 1989.

Goldberg & Millenky, P.C. by Robert G. Millenky, Blackwood, N.J., for plaintiff.

Samuel A. Alito, Jr., U.S. Atty. by James Woods, Asst. U.S. Atty., Newark, N.J., and Donald A. Carr, Acting Asst. Atty. Gen. by Lawrence E. Blatnik, Thomas H. Pacheco, Attys., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendant Reilly.

Anthony J. Parillo, Acting Atty. Gen. of New Jersey by Richard F. Engel, Deputy Atty. Gen., Trenton, N.J., for defendant Daggett.

Leon D. Dembo, West Collingswood, N.J., and Fred D. Furman, Imogene E. Hughes, Kleinbard, Bell & Brecker, Philadelphia, Pa., for defendant Canonie.

## OPINION

BROTMAN, District Judge.

Presently before the court is plaintiff's application for a preliminary injunction to prevent defendants William Reilly, Administrator of the United States Environmental Protection Administration ("EPA"), Christopher Daggett, Director of the New Jersey Department of Environmental Protection ("DEP"), and Canonie Environmental Services Corporation ("Canonie") from commencing with the scheduled cleanup of the Gloucester Environmental Management Services, Inc. ("GEMS") landfill in Gloucester Township, Camden County, New Jersey. The court held an evidentiary hearing and heard oral argument on June 29, 1989. For the reasons set forth below, the court finds that it does not have jurisdiction over this citizens suit, and therefore must dismiss plaintiff's complaint without considering the merits of its application for injunctive relief.

## I. FACTS AND PROCEDURE

Plaintiff Neighborhood Toxic Cleanup Emergency ("NTCE") is an unincorporated association of approximately twenty-three citizens living within close proximity of the GEMS landfill. The landfill is a sixty-acre site containing various toxic substances dumped there during the 1960s and 1970s. The site ranks twelfth on EPA's national priority list of hazardous waste sites in need of remediation. Approximately 6,000 people live within one mile of the landfill and approximately 38,000 live within three miles. NTCE has filed this lawsuit to challenge the cleanup plan selected by EPA—in cooperation with DEP—pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C.A. §§ 9601–9675 (West 1983 & Supp.1989). EPA and DEP derived the challenged remedial plan from an EPA Remedial Investigation and Feasibility Study conducted with respect to the landfill, and the plan is embodied in a Record of Decision signed by the EPA Regional Administrator on September 30, 1985.

Plaintiff's complaint in essence contends that, if implementation of the current remedial plan goes forward without further study, it could pose a health hazard to residents living near the landfill. Plaintiff bases its claim on a recent health assessment of the effects of toxic wastes contained in the GEMS landfill prepared by the Agency for Toxic Substances and Disease Registry ("ATSDR") of the United States Public Health Service. In plaintiff's view, the health assessment indicates that the ATSDR received insufficient information upon which to determine whether remediation of the site would pose a serious health hazard to residents. Plaintiff supports its claim with a report prepared by Frederick B. Higgins, Ph.D., dean of the College of Engineering, Computer Sciences and Architecture of Temple University, who specializes in sanitary engineering. The Higgins report indicates that, because of incomplete environmental data, "a comprehensive medical study of the exposed population is the only way to adequately determine the ability of the residents to with stand [sic] further exposure at current levels or during construction." Plaintiff has also submitted a report prepared by Daniel B. Fishman, Ph.D., and Cary Cherniss, Ph.D., of Rutgers University's Graduate School of Applied and Professional Psychology. The Fishman and Cherniss report evaluated the psychological stress that twelve illustrative NTCE residents suffered from living near the GEMS landfill. The report concluded, "the only satisfactory way of alleviating the psychological problems now experienced by these residents is to provide them the means to leave the area without suffering devastating financial loss." Finally, plaintiff has submitted the report of Marvin C. Ziskin, M.D., Professor of Radiology and Medical Physics at Temple University. That report states that medical studies conducted thus far in the GEMS landfill vicinity are insufficient to predict possible health risks.

Plaintiff supplemented its submissions to the court at the June 29th evidentiary hearing. Plaintiff produced the testimony of Drs. Higgins, Fishman, and Ziskin, and Richard Dahl, a homeowner living in close

proximity to the landfill. The experts' testimony essentially bolstered their written reports. The thrust of the testimony plaintiff presented attempted to support its position that EPA and DEP lack full knowledge of the possible public health effects of the cleanup plan. The witnesses did not testify that EPA's selected remedy was a bad one; instead, they made speculative assertions that EPA failed to obtain proper data before finalizing the remedial plan and therefore the safety measures to be taken at the site could prove inadequate. The defendants countered by presenting the testimony of Lawrence Longo, DEP's GEMS landfill site manager, and Tamara Renkosky, Canonie's corporate health and safety manager. That testimony explained the cleanup procedures Canonie would follow and outlined its elaborate health and safety plan.

Plaintiff seeks relief in three forms: (1) an order temporarily stopping the cleanup of the GEMS landfill; (2) an order requiring defendants to provide to ATSDR the information necessary to perform a complete health assessment; and (3) an order requiring defendants to reopen the Record of Decision and to reconsider the selected remedy adopted in light of disclosures in the new health assessment and in light of the plaintiff's experts' reports. Plaintiff came before the court on June 8, 1989, seeking a temporary restraining order. The court refused to grant the order and set a hearing on plaintiff's request for a preliminary injunction for June 29, 1989. At the June 8th hearing the court granted permission to several interested nonparties to file briefs without requiring them formally to intervene. Those nonparties filing briefs include the Township of Gloucester and the generator and operator defendants in *New Jersey Dep't of Environmental Protection v. GEMS, et al.,* Civ. A. No. 84–0152, a lawsuit currently pending before this court. In addition, many individuals living near the GEMS landfill site have written to the court asking it not to enjoin the cleanup.

Along with their opposition memoranda, defendants DEP and Canonie have filed motions to dismiss this action for lack of subject matter jurisdiction. Defendant

EPA has also raised the defense of lack of subject matter jurisdiction in its opposition papers. Because the court cannot evaluate plaintiff's claim for injunctive relief if it does not have jurisdiction, it must decide the jurisdictional question before it evaluates plaintiff's request for preliminary injunctive relief. At the June 29th hearing the court initially asked the parties to address the question of subject matter jurisdiction. After entertaining argument, the court reserved its decision on the jurisdictional question and continued with the hearing on the merits. The court now turns to the issue of subject matter jurisdiction.

## II. *DISCUSSION*

The jurisdictional statement in plaintiff's complaint explains that this case is before the court pursuant to 42 U.S.C.A. § 9613(h)(4), and the complaint characterizes this action as a citizens suit under 42 U.S.C.A. § 9659. The defendants argue that section 9613(h)(4) does not provide this court with jurisdiction but instead limits CERCLA's citizens suit provision by prohibiting federal courts to consider challenges to a remediation plan until the remedy is completed. The court agrees. The court is sympathetic to the desires of NTCE members and other Gloucester Township residents that it decide the case on the merits; however, the court finds that Congress has constrained its ability to do so. The court further finds that the due process clause does not require it to read an exception into CERCLA's judicial review provision. For the reasons set forth below, the court will dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

### A. *CERCLA's Jurisdictional Scheme*
#### (1) *The Statutory Language*

■ Plaintiff here challenges remedial action developed and selected by EPA in cooperation with DEP pursuant to section 104 of CERCLA, 42 U.S.C.A. § 9604. Consequently, plaintiff must find its remedy under CERCLA as amended by the Super-

fund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99-499, 100 Stat. 1613 (1986). The CERCLA/SARA citizens suit provision states:

*Except as provided in* subsections (d) and (e) of this section and in *section 9613(h) of this title (relating to timing of judicial review)*, any person may commence a civil action on his own behalf—

(1) against any person (including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter (including any provision of an agreement under section 9620 of this title, relating to Federal facilities); or

(2) against the President or any other officer of the United States (including the Administrator of the Environmental Protection Agency and the Administrator of the ATSDR) where there is alleged a failure of the President or of such other officer to perform any act or duty under this chapter, including an act or duty under section 9620 of this title (relating to Federal facilities), which is not discretionary with the President or such other officer.

Paragraph (2) shall not apply to any act or duty under the provisions of section 9660 of this title (relating to research, development, and demonstration).

42 U.S.C.A. § 9659(a) (emphasis added). Section 9613(h), which by the language emphasized above limits the citizens suit provision, provides:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order

issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) *An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.*

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C.A. § 9613(h) (emphasis added).

Defendants argue that, by the language of section 9613(h)(4), Congress allowed challenges only to remedial actions already taken and completed. They argue that by using the past tense, i.e., the words "taken" and "secured," Congress demonstrated its intent to permit challenges only after remedial actions were completed. The final sentence in subsection (4) supports their contention: "Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site." Defendant's plain meaning argument has some support in recent case law. *See State of Alabama v. United States Environmental Protection Agency*, 871 F.2d 1548, 1557 (11th Cir.1989) ("The plain language of the statute indicates that section [9613(h)(4) ] applies only after a remedial action is actually completed."). However, although the statutory language clearly states that review is unavailable until action is taken, the provision is not entirely clear about what constitutes action taken. *See Frey v. Environmental Protection Agency*, 28 Env't Rep. Cas. (BNA)

1660, 1662 (S.D.Ind. Dec. 6, 1988) ("Finding that the statute is not entirely clear about just when in the course of a remedial action a citizen's suit may be brought, the court will look to the legislative history of this section."); *Schalk v. Thomas*, 28 Env't Rep. Cas. (BNA) 1655, 1657 (S.D.Ind. Dec. 6, 1988) (same).

**(2)** *The Relevant Legislative History*

Defendants cite SARA's legislative history to show that Congress intended to foreclose pre-remedial review to promote the policy of cleanup without delay. Defendants point to the Joint Conference Committee Report regarding SARA, which states:

In the new section [9613(h)] of the substitute, the phrase "removal or remedial action taken" is not intended to preclude judicial review until the total response action is finished if the response action proceeds in distinct and separate stages. Rather an action under section [9659] would lie following completion of each distinct and separable phase of the cleanup. For example, a surface cleanup could be challenged as violating the standards or requirements of the Act once all the activities set forth in the Record of Decision for the surface cleanup phase have been completed. This is contemplated even though other separate and distinct phases of the cleanup, such as subsurface cleanup, remain to be undertaken as part of the total response action. Similarly, if a response action is being conducted at a complex site with many areas of contamination, a challenge could lie to a completed excavation or incineration response in one area, as defined in a Record of Decision, while a pumping and treating response activity was being implemented at another area of the facility. It should be the practice of the President to set forth each separate and distinct phase of a response action in a separate Record of Decision document. Any challenge under this provision to a completed stage of a response action shall not interfere with those stages of the response action which have not been completed.

Joint Explanatory Statement of the Comm. of Conference, H. Conf. Rep. No. 99-962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3317; *see also* 132 Cong.Rec. H9,583 (daily ed. Oct. 8, 1986) ("Clearly the conferees did not intend to allow any plaintiff, whether the neighbor who is unhappy about the construction of a toxic waste incinerator in the neighborhood, or the potentially responsible party who will have to pay for its construction, to stop a cleanup by what would undoubtedly be a prolonged legal battle.") (remarks of Rep. Glickman).

Interpreting the relevant legislative history, the courts considering the question have generally agreed that section 9613(h) postpones judicial review until after a discrete phase of remedial action is complete. *See, e.g., State of Alabama,* 871 F.2d at 1557 ("The legislative history behind this section supports rather than clearly contradicts this conclusion."); *Frey,* 28 Env't Rep. Cas. (BNA) at 1664 ("In light of [the] legislative history, the Court finds that 42 U.S.C. § 9613(h)(4) permits citizens' suits challenging EPA actions only once a remedial action or discrete phase of a remedial action has been completed."); *Schalk,* 28 Env't Rep. Cas. (BNA) at 1657 (same); *Dickerson v. Administrator,* 834 F.2d 974, 978 (11th Cir.1987) ("This legislation reflects Congress' intent to preclude pre-enforcement judicial review and is consistent with earlier cases barring such review."); *see also In re Combustion Equip. Assocs., Inc.,* 838 F.2d 35, 37 (2d Cir.1988) ("Congress amended CERCLA in 1986 to make clear that the statute precluded pre-enforcement judicial review."). *But see Cabot Corp. v. United States Environmental Protection Agency,* 677 F.Supp. 823, 829 (E.D.Pa.1988) ("[S]ome legislators emphasized the distinction between suits focusing on health or environmental concerns and suits alleging monetary harm.") (dictum).

**(3)** *A Contrary View*

Plaintiff relies heavily on the district court decision in *Cabot Corp. v. United States Environmental Protection Agency,* 677 F.Supp. 823, 829 (E.D.Pa.1988). That court explored the language and legislative history of section 9613(h)(4) and found that

the section "arguably permits challenges to EPA's plans even before they have been implemented." *Id.* at 828 (citing 132 Cong. Rec. H9,575 (daily ed. Oct. 8, 1986) ("A final cleanup decision, or plan, constitutes the taking of action at a site, and the legislative language makes it clear that citizens' suits under [section 9659] will lie alleging violations of law and irreparable injury to health as soon as—and these words are a direct quote—'action is taken.'") (remarks of Rep. Florio); 132 Cong. Rec. S14,898 (daily ed. Oct. 3, 1986) (It is crucial, if it is at all possible, to maintain citizens' rights to challenge response actions, or final cleanup plans before such plans are implemented....") (remarks of Sen. Stafford)). The court found that the case before it, brought by potentially responsible parties, was really one that should have been brought under section 9613(h)(1), which it found more clearly to prevent pre-enforcement review. *Id.* The court explained,

> The need to ensure that the citizen-suit provision not provide an opportunity for potentially responsible parties to avoid the statutory prohibition on pre-enforcement review of EPA's § 9604 cleanups was of concern to Congress in amending CERCLA. In this regard, some legislators emphasized the distinction between suits focusing on health or environmental concerns and suits alleging monetary harm. The example of a typical citizen suit that legislators frequently averted to during debate over SARA was a suit alleging "that the President or other officials have violated the cleanup standards or other requirements of the law and that the public health or the environment would be threatened if the proposed action were undertaken or continued."

*Id.* at 829 (quoting 132 Cong.Rec. S14,898 (daily ed. Oct. 3, 1986) (remarks of Sen. Stafford)). The court concluded in dicta that pre-remedy citizens suits could brought under section 9613(h)(4) if the plaintiffs sought to address health and environmental hazards, but that they could not be brought if they alleged in essence monetary harm. *Id.*

**(4) *Section 9613(h)(4) Deprives This Court of Subject Matter Jurisdiction Over Plaintiff's Application for Injunctive Relief***

The *Cabot Corp.* court's position might make good sense as a matter of policy; however, although the language of section 9613(h)(4) arguably supports its position, the legislative history by and large fails to support it. Looking first to the language of subsection (4), Congress's use of the past tense ("removal or remedial action taken"; "was in violation of") combined with its final sentence ("Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.") point to one conclusion: Congress intended judicial review of EPA remedial action only after some action is undertaken. It is clear from the plain meaning of the subsection that a remedial plan must go forward before review is available. However, the statute's language fails to answer the question of how much must be done before review is available. Is the mere formulation of a plan enough? Is preliminary construction enough? Does the subsection require completion of at least one phase of the proposed remedy? Must the remedy be complete before a citizens suit will lie? Because the answer is unclear, the court must turn to the relevant legislative history to glean Congress's intent.

The court recognizes that there is some support in SARA's legislative history for the view that EPA's mere formulation of a remedial plan constitutes action taken and is subject to citizens-suit review. *See* 132 Cong.Rec. H9,600 (daily ed. Oct. 8, 1986) ("The legislation allows citizens to bring a lawsuit under section [9659] as soon as the agency announces its decision regarding how a cleanup is structured.") (remarks of Rep. Roe); 132 Cong.Rec. S14,898 (daily ed. Oct. 3, 1986) ("It is crucial, if it is at all possible, to maintain citizens' rights to challenge response actions, or final cleanup plans, before such plans are implemented even in part because otherwise the response could proceed in violation of the law....") (remarks of Sen. Stafford).

However, the most authoritative legislative history supports the view that a citizens suit cannot lie until at least one phase of the cleanup is completed. Because the conference committee report on SARA was commended to the entire Congress, it carries "greater weight than any other of the legislative history." *American Jewish Congress v. Kreps*, 574 F.2d 624, 629 n. 36 (D.C.Cir.1978) (citing *Department of Air Force v. Rose*, 425 U.S. 352, 366, 96 S.Ct. 1592, 1601, 48 L.Ed.2d 11 (1976)). As set forth at length above, that report clearly indicates that a citizens suit will not lie to challenge a choice of remedy until after a distinct phase of the cleanup is completed. Joint Explanatory Statement of the Comm. of Conference, H.Conf.Rep. No. 99–962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3317. In addition, the views of the House Judiciary Committee, which added the provision embodied in section 9613(h)(4) to SARA, also support this position and elaborate on when judicial review becomes available:

> This provision is not intended to allow review of the selection of a response action prior to completion of the action: the provision allows for review only of an "action *taken* ..." (italics added). Thus, after the RI/FS has been completed, the remedial action has been selected and designed, and the construction of the selected action has begun, persons will be able to maintain suit to ensure that a specific on-the-ground implementation of the response action is consistent with the requirements of the Act. For example, a suit under this provisions [sic] may be appropriate where a specific aspect of the remedial action, *which has been taken*, in fact fails to attain a standard required under this Act. The Committee emphasizes that this paragraph is not intended to allow delay of the clean-up and that, in actions under this paragraph, courts should not entertain claims to reevaluate the selection of remedial action. Also, in reviewing actions under this subsection, the courts should use their powers to ensure that such review does not disrupt clean-up remedies.

H.Rep. No. 99–253(III), 99th Cong., 2d Sess. 23, *reprinted in* 1986 U.S.Code Cong. & Admin. 3038, 3046 (emphasis in original).

Plaintiff argues that Congress's ultimate goal in enacting CERCLA/SARA is to safeguard the public from hazardous waste and that an unsafe cleanup would subvert that goal. Plaintiff therefore asks the court to read the statute to allow judicial review of a plan challenged as unsafe. The great weight of the SARA legislative history, however, flatly contradicts such a reading. Synthesizing the text of section 9613(h)(4), the pertinent legislative history, and recent judicial interpretations of the two, it is apparent that the SARA citizens suit provision, as limited by the timing of judicial review provision, operates to allow judicial review of EPA's selection of remedy only after the first phase of that remedy is complete. The subsection also arguably allows judicial review of a specific part of the remedial plan already effected but alleged to have been effected in violation of some CERCLA/SARA requirement. However, in no event is judicial review to delay the start of a cleanup remedy.

Turning to the facts now before the court, NTCE seeks review of EPA's selection of remedy although no remedial work has begun at the GEMS landfill site. If the first phase of the cleanup were complete, or if the cleanup had begun and NTCE sought to challenge a specific remedial measure already completed as contrary to law, the court would have jurisdiction pursuant to sections 9659(a) and 9613(h)(4). Neither challenge is yet appropriate. Instead, NTCE's lawsuit seeks to force EPA and DEP to reconsider their decision to order completion of a particular remedy. By direct congressional mandate this court lacks subject matter jurisdiction over such a challenge. Consequently, unless the due process clause renders Congress's limitation of judicial review unconstitutional, the court must dismiss this action for lack of subject matter jurisdiction.

B. *Due Process Does Not Require the Court to Read an Exception into Section 9613(h)(4)*

■ Plaintiff claims that its right to due process requires the court to read section

9613(h)(4) to allow judicial review. It argues that if Congress indeed intended to restrict judicial review to prevent it from coming into court before it might suffer irreparable harm, that restriction violates the due process clause. *See* U.S. Const. amend. V. Plaintiff explains that in the case of a potentially responsible party attempting to challenge an EPA remedial plan, that party will ultimately have its day in court in a post-remedy cost recovery action. *See Cabot Corp. v. United States Environmental Protection Agency,* 677 F.Supp. 823, 828–29 (E.D.Pa.1988). It further explains that, in contrast, denying a hearing on allegations of irreparable injury to public health until after a cleanup is completed denies the complaining party due process. *See id.* at 829 n. 6. Although this is a powerful argument, after careful thought the court finds it unpersuasive.

■ The court recognizes that in general there is a presumption of judicial review of administrative agency action. That presumption, however, "may be overcome by specific statutory or legislative history that is a reliable indicator of congressional intent." *Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984); *cf. Vogelaar v. United States,* 665 F.Supp. 1295 (E.D.Mich. 1987) ("The issue of whether Congress can create a remedy that is solely administrative, unenforceable and unreviewable through the courts, is one of sovereign immunity and not due process."). *See generally* 5 K. Davis, *Administrative Law Treatise* § 28.3 (2d ed. 1984). The court finds strong evidence that Congress specifically intended to delay claims like plaintiff's, permitting judicial review only after a particular remedial measure or a discrete phase of the remedy is completed. In reviewing SARA, the Committee on Public Works and Transportation confirmed Congress's intent to postpone judicial review even in a case like that now before the court:

> The purpose of [section 9613(h) ] is to ensure that there will be no delays associated with a legal challenge of the particular removal or remedial action selected under section 104 or secured through administrative order or judicial action under section 106. Without such a provision, responses to releases or threatened releases of hazardous substances could be unduly delayed, thereby exacerbating the threat of damage to human health or the environment. *A person's rights to challenge the choice of removal or remedial action are preserved, however, and can be exercised* when an action is taken against a responsible party to recover response costs of damages under section 107, an action to enforce an order to perform response actions, an action for reimbursement for cleanup costs expended by a person order [sic] than the Administrator, *a citizen suit alleging that the removal or remedial action was in violation of any requirement of the Act,* and an action under section 106 by the United States to secure injunctive relief.

H.Rep. 99–253(V), Pub.L. 99–499, 99th Cong., 2d Sess. 25–26, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3124, 3148–49. Both this passage and the legislative history reviewed above plainly demonstrate Congress's intent to overcome the usual presumption of judicial review of agency action.

Plaintiff's right to procedural due process mandates that it have an opportunity to be heard; however, the due process clause does not give it a right to be heard in a federal district court. It is well settled that the Constitution permits Congress to prohibit judicial review of an administrative agency's legal or factual determinations arising in its administration of a particular statute. 5 K. Davis, *supra,* § 28.3, at 260. It remains an open question whether Congress can remove from an article III court the power to review an agency determination of a substantial constitutional issue, *id.* at 264, but this case does not involve such an agency determination. Rather, the issue here is whether EPA's August 1985 GEMS Record of Decision is premised on inconclusive data and whether CERCLA/SARA therefore requires the agency to conduct further testing and to reopen that record to incorporate the addi-

tional data. Because this case does not involve an agency determination of a constitutional question, Congress clearly has the power to preclude judicial review in this court of EPA's Record of Decision.

The due process clause requires EPA to provide plaintiff with an opportunity to be heard. The nature of that opportunity depends upon many factors, the most significant of which is whether the agency is engaged in rulemaking or adjudication. *See* 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 17.8, at 251 (1986) [hereinafter R. Rotunda]. EPA's action in developing a remedial plan and creating a Record of Decision is best described as a hybrid of rulemaking and adjudication. To the extent that EPA's selection of remedy is prospective and affects the public as a whole, that activity is best characterized as rulemaking. *See Bi–Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445–46, 36 S.Ct. 141, 142–43, 60 L.Ed. 372 (1915). To the extent that EPA's action is retrospective and affects a precisely defined group of potentially responsible parties, that action resembles adjudication. *See Londoner v. City and County of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 713–14, 52 L.Ed. 1103 (1908). Plaintiff is a twenty-three member subgroup of the 6,000 people living within one mile—and of the many more thousands living within a few miles—of the GEMS landfill. EPA's action most closely resembles rulemaking with respect to the thousands of people living near the site because its plan is prospective and it does not exceptionally affect "a small number of people '. . . in each case upon individual grounds.'" *United States v. Florida East Coast Railway*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973) (quoting *Bi–Metallic Investment Co.*, 239 U.S. at 446, 36 S.Ct. at 142); *see also id.* at 246, 93 S.Ct. at 821 (agency action not singling out a particular party for special consideration based on its own peculiar circumstances is rulemaking even if its effects are more disadvantageous to some parties than to others). Consequently, the procedures the due process clause requires EPA to accord plaintiff are rela-

tively minimal: It must provide notice and allow public comment. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978); *Florida East Coast Railway*, 410 U.S. at 245, 93 S.Ct. at 821; *see also* 2 R. Rotunda, *supra*, § 17.8, at 251.

By enacting SARA Congress added section 9617 to CERCLA, and that section set out requirements for public participation in EPA's selection of remedy. Essentially, that new section requires EPA to provide notice and a reasonable opportunity for comment as well as the opportunity for a public meeting near the cleanup site. Although section 9617 was not in effect at the time EPA formulated its GEMS landfill Record of Decision, EPA claims to have followed similar procedures. EPA explained at oral argument that it informed the public about its plans and solicited public comments prior to formulating the Record of Decision. Plaintiff does not dispute this. In addition, DEP, which is supervising the remedy, has presently delayed implementation of the planned remedial action for more than two months so the public would have further opportunity to learn about the plan and to voice its comments. The court finds it significant that plaintiff has failed to provide any proof that citizens were deprived of an opportunity to be heard when EPA developed the Record of Decision. Furthermore, plaintiff has failed to demonstrate to the court that the recent ATSDR health assessment contains any information EPA failed to consider in formulating the Record of Decision. There consequently exists no basis upon which the court could determine that EPA denied plaintiff's members due process in selecting a remedy for the GEMS landfill.

Finally, assuming, *arguendo*, due process requires more than the right to hear of and comment on EPA's proposed selection of remedy, plaintiff does have some opportunity to be heard in the courts. First, the Joint Conference Committee Report stated that section 9613(h) "is not intended to affect in any way the rights of persons to bring nuisance actions under

State law with respect to releases or threatened releases of hazardous substances, pollutants, or contaminants." Joint Explanatory Statement of the Comm. of Conference, H.Conf.Rep. No. 99–962, 99th Cong., 2d Sess. 224, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3317. Plaintiff has neither attempted to argue that this court has jurisdiction to consider a challenge based on New Jersey nuisance law nor attempted to argue that the selected remedy will constitute a nuisance; instead, plaintiff has sought review of EPA's choice of remedy. Second, section 9613(h) does not foreclose plaintiff from bringing a lawsuit to review a specific measure actually taken at the GEMS site on the basis that the measure is in violation of some CERCLA/SARA requirement. *See* H.Rep. No. 99–253(III), 99th Cong., 2d Sess. 23, *reprinted in* 1986 U.S.Code Cong. & Admin. 3038, 3046 ("[A] suit under this provisions [sic] may be appropriate where a specific aspect of the remedial action, *which has been taken,* in fact fails to attain a standard required under this Act.") (emphasis in original). Third, although for obvious reasons of somewhat less utility, plaintiff could bring a post-remedy citizens suit alleging that the remedy was in violation of some requirement of CERCLA/SARA. *See* H.Rep. 99–253(V), Pub.L. 99–499, 99th Cong., 2d Sess. 25–26, *reprinted in* 1986 U.S.Code Cong. & Admin. News 3124, 3148–49.

## III. CONCLUSION

SARA's timing of judicial review provision read in light of its legislative history removes this court's jurisdiction to review an EPA Record of Decision selecting a remedy for a hazardous waste site until either a distinct phase of that remedy is complete or until a specific remedial measure is taken in violation of some CERCLA/SARA requirement. This provision reflects the congressional purpose of removing litigation as an obstacle to rapid cleanup. The court cannot accept plaintiff's view that this restriction on the availability of judicial review violates its right to due process. Because the court lacks subject matter jurisdiction under

CERCLA/SARA to review EPA's selection of remedy, it cannot reach the merits of plaintiff's claim for injunctive relief. Instead, the court must dismiss plaintiff's complaint.

An appropriate order will be entered.