UNITED STATES of America, Plaintiff,

v.

AMERICAN COLOR AND CHEMICAL CORPORATION, Pfister Chemical, Inc. and Beazer East, Inc., Defendants.

No. 4:CV–92–1352.

United States District Court, M.D. Pennsylvania.

Aug. 27, 1993.

---

Timothy Burns, Catherine M. Rojko, Environmental Enforcement Section U.S. Justice Dept. Washington, DC, for plaintiff.

Frank M. Thomas, Jr., Kenneth A. Rubin, Sarah E. Davies, Morgan, Lewis & Bockius, Philadelphia, PA, for defendants American

Color and Chemical Corp. and Beazer East, Inc.

### *MEMORANDUM*

McCLURE, District Judge.

## *BACKGROUND*

This is an action by the United States for reimbursement of response costs and for a declaratory judgment[1] on liability pursuant to sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(g)(2), in connection with the Drake Chemical Superfund Site (the Drake site or the site) and the American Color and Chemical facility (the AC & C facility or the site) located in Lock Haven, Clinton County, Pennsylvania.[2]

The Environmental Protection Agency (EPA) began cleanup efforts at the site in February, 1982. The Drake site was placed on the National Priorities List (NPL) in 1983 pursuant to section 105 of CERCLA, 42 U.S.C. § 9605. The NPL identifies facilities nationwide at which the release or threatened release of hazardous substances present a serious threat to the public health and the environment.

The United States is now seeking reimbursement of the costs it incurred in responding to the release of hazardous substances at the site from owner/operators allegedly liable as responsible parties under section 9607(a), namely American Color and Chemical Corporation (American Color), Pfister Chemical, Inc. (Pfister) and Beazer East, Inc. (Beazer).

The United States seeks to recover expenses which it has incurred and will incur in cleanup efforts. The Commonwealth of Pennsylvania was granted leave to intervene as a plaintiff, Fed.R.Civ.P. 24, to recover those costs which it is obligated to pay, and has paid under section 104 of CERCLA, 42 U.S.C. § 9604. EPA's and the Commonwealth's respective financial obligations are also set forth in three Superfund State Con-tracts which they executed. The Commonwealth is obligated to pay 10% of the cost of the remedial action, and 100% of all future operation and maintenance costs of the remedial action.

EPA's involvement with the Drake site began in 1980. Investigations conducted by, and under the direction of, EPA revealed contaminated surface water, groundwater and soil. EPA conducted a Remedial Investigation/Feasibility Study (RI/FS) to determine the nature and extent of contamination of a leachate stream, leachate lagoons, and nearby Bald Eagle Creek, and to assess alternatives for remediation. EPA issued the first record of decision (ROD I) for the remediation of the leachate stream in September, 1984. Work under ROD I was completed in 1987. A second RI/FS conducted to determine the nature and extent of contamination of buildings, lined lagoons, and other structures at the Drake site was completed in March, 1986. A second ROD (ROD II) was issued in May, 1986 for the remediation of those structures. That work is now, also, completed. (Record Document No. 56, p. 5)

Following completion of the work required under RODs I and II, EPA began work on a third RI/FS (Phase III RI/FS) to determine the extent of contamination in soils and sediment at the site. Results from that analysis were interpreted to indicate that contaminants were distributed throughout the site, and that contamination had leached through the layers of soil and sludge to the groundwater table. On the basis of these findings, EPA determined in a third ROD (ROD III) issued September 29, 1988, that remedial action in the form of incineration of the entire 12.5 acre site is necessary, and has received bids for the project. The EPA proposes to incinerate the soil down to groundwater, to depths averaging more than 12 feet. The project is estimated to take 3 to 5 years to complete at a cost of $123 million.

---

1. 28 U.S.C. § 2201.

2. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 42 U.S.C. § 9607(a) and 9613(b).

Defendants American Color and Beazer seek an injunction [3] barring the EPA from proceeding with the incineration project pending reconsideration of new contamination data on the site which, they allege, proves that such drastic, extensive and costly remedial action is totally unnecessary and is not consistent with the National Contingency Plan (NCP). On August 3, 1993, defendants moved for a temporary restraining order and a preliminary injunction [4] prohibiting such action pending reconsideration on the basis of new data gathered in 1990 and interpreted by the United States Army Corps of Engineers (USACE) as superseding prior data, gathered in 1987, on which the decision to incinerate the site was based. Defendants seek an order: 1) prohibiting the EPA from implementing the soil incineration remedy until the EPA has reevaluated the project in accordance with CERCLA and the National Contingency Plan (NCP); 2) remanding the September 29, 1988 record of decision (ROD III) selecting soil incineration as the appropriate remedy to the EPA for reconsideration in accordance with NCP procedures; and 3) requiring the EPA to produce "all non-privileged documents" referring or relating to environmental conditions at the Drake site within fifteen days.

Defendants' motion is opposed by the United States on the grounds that this court lacks subject matter jurisdiction under section 113(h) of CERCLA, 42 U.S.C. § 9613, to enjoin the EPA from carrying out the project and that the defendants cannot, in any event, establish the prerequisites for the granting of injunctive relief. The Commonwealth joins the United States in opposing defendants' motion. Defendant Pfister sides with its co-defendants on the motion.

Defendants' request for a temporary restraining order was denied by the court, following a telephone conference call, by order of August 3, 1993 (Record Document No. 55).

For the reasons discussed below, we find that this court does not have subject matter jurisdiction over defendants' motion under section 113(h) of CERCLA and do not reach the merits of defendants' claim for injunctive relief. Defendants' motion will be denied for lack of subject matter jurisdiction.

## DISCUSSION

### EPA response

■ There are three alternatives under CERCLA for responding to the release or threatened release of hazardous substances: 1) The EPA can conduct its own cleanup of the site and then recover its remedial and response costs from the responsible parties. 42 U.S.C. § 9604(a) and 9607(a). 2) The EPA can order the potentially responsible parties to clean up hazardous substances on their property. 42 U.S.C. § 9606(a). 3) Third parties can carry out the cleanup efforts and recover their costs from the responsible parties. 42 U.S.C. § 9607(a) and 9612. *Reardon v. United States,* 731 F.Supp. 558, 561 (D.Mass.1990), *modified on other grounds,* 947 F.2d 1509 (1st Cir.1991).

■ The first alternative is the one chosen by the EPA in this instance. Under this option, the EPA has the right to bring an action in federal court to recover its response costs from the responsible parties. Response costs include the cost of both removal and remedial actions. The two are distinguished by the time frame and the extensiveness of the action. A removal action is generally an immediate or interim measure undertaken to abate a present, serious threat to the public welfare. 42 U.S.C. § 9601(23). A remedial action, on the other hand, is a long-term or permanent solution to the problem. 42 U.S.C. § 9601(24). See: *Reardon, supra,* 731 F.Supp. at 563.

### Alleged lack of jurisdiction

#### Section 113(h)

■ As the party requesting relief, defendants have the burden of demonstrating that this court has subject matter jurisdiction over its request. Although section 113(b) of CERCLA, 42 U.S.C. § 9613(b), grants dis-

---

**3.** The United States' motion to dismiss defendants' joint amended counterclaims against the United States will be addressed in a separate memorandum.

**4.** Record Document No. 53.

trict courts exclusive, original jurisdiction over all controversies arising under CERCLA, federal jurisdiction is restricted by the "timing of review" limitations imposed by section 113(h). Section 113(h) provides, in relevant part:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 ... or under State law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except ... the following ...

42 U.S.C. § 9613(h).

■ Section 113(h) evidences Congress' plain intent to limit a private party's ability to challenge EPA cleanup activities under CERCLA until EPA has completed its work at the site. *Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1018 (3d Cir.1991). Congress passed section 113(h) to ensure that the prompt cleanup of hazardous waste sites would not be delayed interminably by litigation challenging the remedial action selected by the EPA. *Reardon, supra,* 731 F.Supp. at 563, citing legislative history of Superfund Amendments and Reauthorization Act of 1986 (SARA). Accord: *North Shore Gas Company v. Environmental Protection Agency,* 930 F.2d 1239, 1244 (7th Cir.1991).

The Third Circuit described the rationale for the jurisdictional bar in *Boarhead, supra,* 923 F.2d at 1019, stating:

> The limits § 113(h) imposes on a district court's jurisdiction are an integral part of Congress' overall goal that CERCLA free the EPA to conduct forthwith clean-up related activities at a hazardous site. Congress enacted CERCLA so that the EPA would have the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its tracks by legal entanglement before or during the hazard clean-up.... The limits § 113(h) established are designed to prevent time-consuming litigation from delaying the prompt clean-up of these sites. CERCLA's language shows Congress concluded that disputes about ... what measures are actually necessary to clean-up the site and remove the hazard or who is responsible for its costs should be dealt with after the·site has been cleaned up.

(Citations omitted.)

### Pre-enforcement bar

Consistent with Congressional intent, federal "[c]ourts have consistently held that section 113(h) of CERCLA bars pre-enforcement judicial review of the EPA's choice of removal or remedial actions." *Reardon, supra,* 731 F.Supp. at 564 (Footnote omitted.) Prior to enactment of the 1986 SARA amendments, federal courts refused to review challenges to EPA removal or remedial actions on the grounds that judicial review would delay cleanup efforts. Section 113(h), part of the 1986 SARA amendments, codified prior case law[5] prohibiting pre-enforcement review of EPA cleanup efforts. Since the 1986 amendment, federal courts have consistently rejected attempts to challenge EPA cleanup efforts before their completion, subject only to the limited exceptions set forth in section 113(h)(1–5). *United States v. Princeton Gamma–Tech, Inc.,* 817 F.Supp. 488, 494–95 (D.N.J.1993); *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828 (D.N.J.1989) and *Reardon, supra,* 731 F.Supp. at 564.

### Section 113(h)(1)

■ The only section 113(h) exception arguably applicable to defendants' motion for a preliminary injunction is the first one, which provides that federal courts have jurisdiction "to review ... challenges to removal or remedial action selected under section 9604 of this title ... [in] ... [a]n action under section 9607 of this title to recover response costs or damages or for contribution." 42 U.S.C. § 9613(h)(1).

Defendants argue that the pendency of the United States enforcement action overrides the prohibition against judicial interference with an on-going EPA remedial action and provides a basis for the exercise of federal

---

5. See, e.g. *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882 (3d Cir.1985).

jurisdiction. That contention is inconsistent with the Third Circuit's interpretation of the pre-enforcement bar in *Boarhead, supra,* 923 F.2d at 1020.

In *Boarhead,* the Third Circuit interpreted section 113(h) as prohibiting legal action until the clean-up of the hazardous site is complete *and* one of the five situations described in 113(h)(1–5) is present. See also: *North Shore Gas, supra,* (Seventh Circuit held that the protesting potentially responsible party "must wait till construction of the new slip (part of the remedial action required by the EPA) is complete—indeed, till the entire clean-up of the old Superfund site is complete—before it can bring suit" challenging the necessity of such action—even if it will then be too late to stop such action and costs of remediation will be increased by $1 million.) and *Lone Pine Steering Committee v. United States Environmental Protection Agency,* 777 F.2d 882, 887 (3d Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986) (pre-SARA case), ("[P]re-response judicial review is not available in a § 9604 case").

### Pendency of claim for ROD III costs

Although the law on the points addressed above is clear, this case poses a difficult question in one respect. The United States argues that section 113(h)(1) is not a valid basis for the exercise of jurisdiction over defendants' motion, since it comes into play only when the government seeks to recover the costs incurred in a remedial action. However, that is exactly what is requested here. The United States requests not only reimbursement for completed phases of the response, namely the work performed under RODs I and II, but also the costs to be incurred under ROD III, the decision which defendants now challenge. EPA seeks to recover all costs incurred up to the date of trial.

While the United States intent to recover such costs is expressed somewhat obliquely in the *ad damnum* clause of its complaint, it was made plain by counsel's statements at oral argument held August 23, 1993 on defendants' motion. Plaintiff requests, in the *ad damnum* clause of its complaint:

> judgment against the defendants, jointly and severally, in favor of the United States, for all response costs incurred by the United States in response to the release or threat of release of hazardous substances at the Drake Site ...

(Record Document No. 1, p. 14)

Counsel for EPA confirmed during oral argument that, at trial in this action, the United States will seek to recover all response costs incurred up to the date of trial. (N.T., Aug. 23, 1993, pp. 38–39) Such costs will necessarily include costs incurred in connection with the ROD III incineration project. Much effort and expense has already gone into assessing the feasibility of the project and bidding the contract. Unless the incineration project is enjoined by this court, EPA will award a contract on or about September 30, 1993, and, we assume, work under the contract will commence promptly thereafter.

This case has not yet been placed on a trial list, and it is unlikely that it will come to trial before the end of 1993. Thus, by the time of trial, the United States will, according to its own statements of intention, be seeking from defendants not only costs incurred on completed phases of the remedial action, but also pre-implementation "administrative", and analysis costs for the incineration project, as well as a portion of actual implementation costs.

It is that effort to recover response costs for a project yet to be completed which sets this action apart from most other cases confronted with a challenge to EPA's selection of remedial action. Only a few reported decisions in this circuit have addressed the applicability of the section 113(h) jurisdictional bar in the context of an enforcement action filed by the EPA.[6] In those cases, however, the courts have unhesitatingly held the jurisdictional bar applicable despite the pendency of an EPA enforcement action. See, e.g. *Princeton Gamma–Tech, supra,* 817 F.Supp. at 494–95.

---

6. Compare: *Boarhead, supra,* 923 F.2d at 1019 ("[I]t is undisputed that Boarhead's complaint does not meet any of the five exceptions enumerated in § 113(h)." Footnote omitted.)

While permitting defendants to challenge implementation of EPA's proposed remedial action would run counter to the absolute bar against pre-enforcement challenges, other considerations suggest that there is some merit to defendants' contention that their challenge should be permitted to go forward.

The majority of cases which dismissed or denied requested pre-enforcement relief for lack of subject matter jurisdiction were filed before the commencement of an enforcement action by EPA for costs incurred on the project being challenged.[7]  See, e.g., *Fairchild Semiconductor Corp. v. United States, Environmental Protection Agency*, 984 F.2d 283, 287 (3d Cir.1993) (Allegedly responsible party filed suit against the EPA alleging breach of contract and violation of due process rights; jurisdiction held not to exist on basis of non-applicability of any section 113(h) exception.); *North Shore, supra*, 930 F.2d at 1244 (Private party "must wait till construction of ... [structure required by remedial plan] is complete—indeed, till the entire clean-up of the old Superfund site is complete—before *it* can bring suit." Emphasis supplied.); *Lone Pine, supra*, (pre-SARA case) (private parties filed declaratory judgment action challenging EPA remedial action); and *Wheaton Industries v. United States, Environmental Protection Agency*, 781 F.2d 354, 356 (3d Cir.1986) (Action for injunctive relief filed by allegedly responsible party).

In addition, it was the United States' choice of remedies which triggered the arguable applicability of section 113(h)(1). The United States had a number of choices in initiating this action. It could have sought only to recover costs incurred for completed phases of the remedial action. It could also have sought to recover such previously-in-curred costs and requested, in addition, a declaratory judgment deeming defendants responsible parties under section 107.  However, in lieu of either of those choices, it elected to file an action for completed-project costs as well as costs incurred in the incineration project which has yet to get underway. Nothing in the law compelled it to bring the enforcement action for such costs at this time.  Having done so, however, it subjected itself to the possibility of a pre-enforcement challenge.  Compare: *Boarhead, supra*, 923 F.2d at 1019 ("Congress concluded that disputes about who is responsible for a hazardous site, what measures actually are necessary to clean up the site and remove the hazard or who is responsible for its costs should be dealt with after the site has been cleaned up.) and *United States v. Charles George Trucking Co., Inc.*, 682 F.Supp. 1260, 1272 (D.Mass.1988) ("Although the United States brought a claim under § 9607 in its Complaint, that claim is not part of the motion now before me.... The § 9607 cost-recovery claim in the United States' complaint is wholly independent of the § 9604 claim that provides the basis for the instant motion.")

While these considerations are worthy of note, they do not act to remove the absolute prohibition against judicial interference with a pending remedial action, under the clear mandate of *Boarhead, supra*. The unavailability of the relief which defendants seek, i.e. an injunction halting implementation of the incineration remedy and directing reconsideration of ROD III in light of new data, becomes clear when one considers the true holding of the cases.  While the courts have routinely couched the section 113(h) jurisdiction bar as prohibiting judicial review prior to completion of the remedial action, or some

---

7.  A statement by the Third Circuit in a footnote in *Boarhead, supra*, also raises a question. The court stated that it left open, what it termed the "troubling question" of whether

> judicial review would be available if Boarhead could show that Erickson failed to comply with the regulations the EPA has promulgated pursuant to CERCLA ...

*Id.* at 1022 n. 17.

We have great difficulty reconciling that statement with the case holding.  Read in isolation, it infers that there is some further exception to the jurisdiction bar of section 113(h) if a party alleges non-compliance with EPA regulations.  However, that inference is plainly at odds with the holding of the case.  Compare: *North Shore, supra*, 930 F.2d at 1245 ("This suit does not challenge the EPA's action in refusing to rescind the order for the construction of the new slip as an arbitrary and capricious application of the agency's Superfund powers.  This suit is based on collateral statutes and as such runs straight into the bar of section 113(h).")

discrete phase thereof, the more accurate characterization is that it is not judicial review that is prohibited pre-completion, but judicial relief in the form of an injunction or any other action which would in any way interfere with or delay EPA's implementation of a chosen remedy. Federal courts are permitted to *review* the selection of a remedy before completion of the remedial action when the United States files an enforcement action seeking costs incurred. That will occur in this case. As the United States points out in its brief, defendants can challenge EPA's selection of a remedial action via an affirmative defense to EPA's claim for costs incurred.

### Affirmative defense

■ Defendants can assert inconsistency with the NCP as an affirmative defense in defending EPA's claim for reimbursement of ROD III expenditures. They simply cannot attempt to halt the implementation of that remedy, or require that another remedy be considered, as they request in their motion for injunctive relief. If the court finds, in accordance with the standards set forth in section 113(j), that EPA's selection of remedies was arbitrary and capricious, and that such costs are not consistent with the NCP, EPA will be barred from recovering costs associated with that phase of the cleanup. See: *North Shore Gas, supra,* 930 F.2d at 1245.

Even the potential unavailability of a meaningful remedy at a later date does not justify judicial intervention in the cleanup process. The most striking example of this is *Boarhead, supra,* in which the proposed remedy was the incineration of soil on plaintiff's farm which would destroy or damage irreparably Indian artifacts located on the property. Plaintiff sought relief under the National Historic Preservation Act, 16 U.S.C. §§ 470 to 470w–6 (West 1985 & Supp.1990), claiming that it gave the court a jurisdictional basis for stay of EPA's CERCLA-related cleanup activities. The district court held that the section 113(h) jurisdictional bar deprived it of subject matter jurisdiction. On appeal, the Third Circuit affirmed, stating:

CERCLA's timing of review procedures, as established in § 113(h), clearly preclude jurisdiction to delay or interfere with EPA clean-up activities even if those activities could irreparably harm the archaeological or historical resources on the plaintiff's property.... Although post-study review cannot rectify damage to historical artifacts or remains on this landmark site that occurs in the course of the EPA's clean-up, we must presume Congress balanced the problem of irreparable harm to such interests and concluded that the interest in removing the hazard of toxic waste from Superfund sites outweighed it. Boarhead's remedy lies with Congress, not the district court. The prohibition on jurisdiction included a prohibition on equitable relief.

*Boarhead, supra,* 923 F.2d at 1023.

### Summary

The section 113(h)(1) exception to the jurisdiction bar does not confer jurisdiction on this court to grant the relief sought by defendants, namely an order halting EPA plans to proceed with the work required under ROD III and requiring reconsideration of the remedial action selected under ROD III based on the existence of new data.

Third Circuit holdings and other precedent have made it clear that federal courts do not have jurisdiction to entertain a motion for injunctive relief to halt, delay, or compel reconsideration of, a remedial action selected by the EPA. Section 113(h)(1) confers jurisdiction only to permit review of the chosen remedial action for purposes of determining whether the EPA can recover the costs it incurred from responsible parties.

This court, therefore, lacks subject matter jurisdiction to grant the relief which defendants request. Their motion will be dismissed on that ground.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion for a preliminary injunction (Record Document No. 53) filed August 3, 1993 by defendants American Color and Chemical Corporation and Beazer East, Inc. is denied for lack of subject matter jurisdic-

**114**

tion pursuant to CERCLA section 113(h), 42
U.S.C. § 9613(h).