**COOPER INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES ENVIRONMENTAL PROTECTIONAL AGENCY, William K. Reilly, in his official capacity as Administrator of the United States Environmental Protection Agency, Valdas Adamkus, in his official capacity as Regional Administrator of Region V, The Michigan Department of Natural Resources, and Roland Harmes, in his official capacity as Administrator of The Michigan Department of Natural Resources, Defendants.**

No. 4:91–CV–149.

United States District Court,
W.D. Michigan.

Oct. 9, 1991.

John R. Dresser, Dresser Law Office, P.C., Sturgis, Mich., Maclay R. Hyde, Douglas Rainbow, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff Cooper Industries, Inc.

W. Francesca Ferguson, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Alan D. Greenberg, Barry M. Hartman, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendants E.P.A., William K. Reilly and Valdas Adamkus.

Kathleen L. Cavanaugh, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., E.P.A., Environmental Protection Div., Lansing, Mich., for defendants Michigan Dept. of Natural Resources and Roland Harmes.

William P. Marks, Marks, Svendsen, Bird & Wilson, Sturgis, Mich., for movant City of Sturgis.

## OPINION

ENSLEN, District Judge.

Plaintiff, Cooper Industries, Inc. (Cooper), commenced this suit against the United States Environmental Protection Agency (EPA or Administrator), the Michigan Department of Natural Resources (MDNR), and various individuals of those agencies acting in their official capacities, challenging defendants' actions pertaining to the development of a remedial plan under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA or Superfund), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA or 1986 Amendments), codified at 42 U.S.C. §§ 9601, *et seq.*

This matter is before the Court on plaintiff's motions for a writ of mandamus and preliminary injunction. Cooper seeks to have this Court compel defendants to perform certain statutory duties and enjoin them from adopting a final remedial action plan until those duties are discharged. Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Because I conclude that this Court lacks subject matter jurisdiction over plaintiff's complaint, plaintiff's motions are denied and defendants' motion to dismiss is granted.

## STATUTORY BACKGROUND

This case concerns the statutory and regulatory process of selecting a plan to remedy the release of hazardous substances. Therefore, I will first set forth the relevant statutory and regulatory framework before reviewing the factual background of the instant dispute, as an understanding of the legal context and its attendant acronyms is necessary for understanding the facts of this case.

CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*, provides a comprehensive statutory scheme for cleaning up hazardous substances. CERCLA allows the Administrator of the EPA to undertake direct removal or remedial action "to protect the public health or welfare or the environment" when the Administrator determines that there is an actual or threatened release of a hazardous substance into the environment at a particular site. 42 U.S.C. § 9604(a)(1).[1] The primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. EPA,* 767 F.2d 263, 264 (6th Cir. 1985).

Removal refers to short-term action taken to halt any immediate risks posed by hazardous wastes, including such actions as "may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment. . . ." 42 U.S.C. § 9601(23). Removal action may precede remedial action, which refers to permanent remedies taken instead of or in addition to removal action. 42 U.S.C. § 9601(24). The term "response actions" refers to both removal and remedial actions. 42 U.S.C. § 9601(25).

In determining the appropriate response action the Administrator "may undertake such investigations, monitoring, surveys, testing, and other information gathering" necessary to identify the existence and extent of the release or threat of release, the source and nature of the hazardous substances involved, and the extent of danger to the public and the environment. 42 U.S.C. § 9604(b)(1). In addition, the Administrator is authorized to "undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he [sic] may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of [CERCLA]." *Id.*

Response actions must be consistent with the national contingency plan (NCP), which consists of EPA regulations establishing the methods and criteria for determining the appropriate response to the release of hazardous substances. 42 U.S.C. §§ 9604(a), 9605. Before any remedial action is undertaken, the site is studied, alternatives are examined, and a preferred cleanup remedy is selected in accordance with the administrative procedures set forth in the NCP. This process results in a site-specific study called a Remedial Investigation/Feasibility Study (RI/FS). *See* 40 C.F.R. § 300.430(d)–(f). The RI entails data collection and site characterization in order to determine the nature and extent of contamination at the site. At the conclusion of the RI, an FS is conducted to identify and evaluate alternatives for remedial action.

Pursuant to CERCLA, the EPA is required to present to the public a brief analysis of the plan it proposes and the alternative plans that it considered, and provide a reasonable opportunity for interested persons, including potentially responsible parties, to comment and provide information regarding the plan. 42 U.S.C. § 9613. Based on the public comments received and a review of the criteria set forth in the national contingency plan, including such factors as cost, technology, reliability, and administration, and their relative effects on public health and welfare and the environment, 40 C.F.R. § 300.430(f)(5), the EPA selects the remedy that it plans to implement at the site and issues a "Record of Decision" (ROD) setting forth the final remedial action plan.

The EPA may either respond to the problem directly by implementing the remedial action itself, or it may seek to compel a

---

**1.** Although the authority under CERCLA and SARA is granted, in large measure, to the President of the United States, the President has delegated most of his authority to the Administrator of the EPA. *See* Executive Order No. 12,580, 52 Fed.Reg. 2923 (Jan. 23, 1987), 3 C.F.R. 193 (1987 Comp.) superseding Executive Order No. 12,316, 46 Fed.Reg. 42,237 (Aug. 20, 1981).

third party to undertake response action. The Administrator may bring an action in federal district court seeking an order requiring responsible parties to take such action as may be necessary to abate the danger or threat caused by the release of hazardous substances, or the Administrator may issue an administrative order directing the responsible parties to take appropriate action. 42 U.S.C. § 9606(a). If the EPA responds directly by undertaking removal or remedial action, it may then seek to recover the costs of the removal or remedial action from responsible parties, which parties may include past and present owners of the site, generators of hazardous substances, and transporters of hazardous substances to the site. 42 U.S.C. § 9607(a).

The plaintiff in this case has been identified as a potentially responsible party (PRP) and may be subject to orders and cost recovery actions under sections 9606 and 9607 of CERCLA. Although the term enforcement is not explicitly defined by the statute, it has been interpreted to include actions under sections 9606 and 9607. *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 291 (6th Cir.1991). Thus, pre-enforcement judicial review is "judicial review of EPA actions prior to the time that the EPA or a third party undertakes a legal action to enforce an order or to seek recovery costs for the cleanup of a hazardous waste site." *Id.*

The EPA has not yet selected a remedial action for the site at issue in the instant case, the Sturgis, Michigan municipal well field. However, it has indicated that it plans to do so by September 30, 1991, the day of this hearing. Cooper's complaint relates to certain duties that the EPA must undertake pursuant to CERCLA before the agency selects a remedial action. In sections 9613(k) and 9617 of CERCLA, Congress set forth various procedures to assure public participation in the selection of remedial actions. 42 U.S.C. §§ 9613(k), 9617. In the instant case, Cooper contends that it was denied the participation intended by these provisions.

Under section 9613(k)(1), the EPA must establish an administrative record upon which it will base the selection of a response action, and section 9613(k)(2) provides for public participation in the compilation of this administrative record. With respect to the selection of remedial actions (the type of response action at issue in this case), section 9613(k)(2)(B) provides in pertinent part as follows:

**(B) Remedial action**

The President shall provide for the participation of interested persons, including potentially responsible parties, in the development of the administrative record on which the President will base the selection of remedial actions and on which judicial review of remedial actions will be based. The procedures developed under this subparagraph shall include, at a minimum, each of the following:

(i) Notice to potentially affected persons and the public, which shall be accompanied by a brief analysis of the plan and alternative plans that were considered.

(ii) A reasonable opportunity to comment and provide information regarding the plan.

(iii) An opportunity for a public meeting in the affected area, in accordance with section 9617(a)(2) of this title (relating to public participation).

(iv) A response to each of the significant comments, criticisms, and new data submitted in written or oral presentations.

(v) A statement of the basis and purpose of the selected action.

. . . .

42 U.S.C. § 9613(k)(2)(B).

Section 9617(a) of CERCLA, referred to in section 9613(k), provides that before adoption of any remedial action the EPA must take both of the following actions:

(1) Publish a notice and brief analysis of the proposed plan and make such plan available to the public.

(2) Provide a reasonable opportunity for submission of written and oral comments and an opportunity for a public meeting at or near the facility at issue regarding the proposed plan and regarding any proposed findings under section

9621(d)(4) of this title (relating to cleanup standards). The President or the State shall keep a transcript of the meeting and make such transcript available to the public.

42 U.S.C. § 9617(a)(1) and (2).

In addition to the two statutory provisions related to public participation, Cooper's complaint implicates a third provision of CERCLA. Cooper asserts that defendants did not fulfill their statutory duty "to make reasonable efforts to identify and notify potentially responsible parties as early as possible before selection of a response action." 42 U.S.C. § 9613(k)(2)(D).

## FACTUAL BACKGROUND

The municipal well field in Sturgis, Michigan, provides water to approximately 10,000 city residents and numerous businesses, industries, and service institutions. In 1982, the Michigan Department of Health discovered that three of the five municipal wells serving Sturgis were contaminated with volatile organic compounds (VOCs), identified as trichloroethylene (TCE) and tetrachloroethylene (PCE). TCE and PCE are organic solvents commonly used as degreasing or cleaning agents in dry cleaning, metal fabrication, and other industrial and commercial applications. In 1984, the site was placed on the National Priorities List, 40 C.F.R. Part 300, Appendix B, a list of hazardous waste sites posing the greatest threat to health, welfare and the environment prepared pursuant to 42 U.S.C. § 9605(a). In June 1987, the EPA and MDNR entered into a "cooperative agreement" pursuant to 42 U.S.C. § 9604(d)(1), which designated MDNR as the lead agency for the cleanup of the site and provided Michigan with funding from the Superfund for the RI and FS.

Warzyn Engineering, Inc. (Warzyn) conducted the RI from June 1987 to April 1991, under the auspices of MDNR. According to a document made available to the public during the public comment period on the EPA's proposed plan, titled "Proposed Plan Sturgis Municipal Well Field Superfund Site June, 1991" (Proposed Plan), Warzyn's RI identified the nature and extent of site contamination by collecting and analyzing soil, soil gas, groundwater, and surface water samples. Site geology and groundwater flow patterns were also studied. In addition to identifying TCE and PCE contamination of the groundwater in excess of Federal drinking water standards, the RI identified three locations as primary TCE/PCE contamination sources, including Kirsch Company, Plant No. 1 (Kirsch), owned and operated as a division of Cooper.

According to the affidavit of Terese Van Donsel, EPA's Remedial Project Manager for the Sturgis site, officials of EPA and MDNR met with representatives of Cooper on May 9, 1990, to discuss technical issues associated with the site. Van Donsel Affidavit, ¶ 5. According to Van Donsel, at that meeting Cooper offered to take over and complete the RI/FS process. However, EPA declined Cooper's offer on the basis that the RI/FS process was too far advanced and too near completion, thus making it difficult to make the transition from an RI/FS financed by the Superfund to a privately financed RI/FS. *Id.*, ¶ 6. Although Cooper acknowledges that technical issues associated with the site were discussed at the meeting, Cooper disputes the assertion that it offered to take over and complete the RI/FS process. Cooper claims that because it had been identified as a potentially responsible party in the RI, it merely sought the meeting to gain an understanding of the remedies being considered for the site. According to Cooper, the only request made at the meeting was for permission to meet with representatives of Warzyn to review the computer model of hydrology for the site, which request was subsequently denied. Teets Aff., ¶¶ 8–9.

The RI/FS was completed and made available to the public, along with the Proposed Plan and the rest of the administrative record, on June 10, 1991, at the information repository established at the Sturgis Public Library. Van Donsel Aff., ¶ 7. In accordance with the requirements of 40 C.F.R. § 300.430(f)(3), a notice was published in the *Sturgis Journal* on June 7, 1991, announcing the availability of the RI/FS

report and the Proposed Plan setting forth the EPA's preferred remedial plan, the commencing of a public comment period to run from June 10, 1991 to July 10, 1991, and a public meeting to be held on June 20, 1991. *Id.*

On June 14, 1991, a representative of Cooper contacted Van Donsel and requested a meeting with EPA and MDNR officials to discuss technical issues and remedial options for the site. Cooper also requested an extension of the public comment period. Van Donsel agreed to extend the public comment period for 30 days, allowing for a total comment period of sixty days, which extension was subsequently announced at the public meeting on June 20, 1991. *See* Van Donsel Aff., ¶ 8, and Teets Aff.Ex. 7 at 5 (transcript of public hearing). Although the transcript of the public meeting indicates that the comment period was extended to August 10, 1991, the parties' briefs to this Court state that the extension ran through August 12, 1991.

With respect to Cooper's request for a meeting, Van Donsel replied that the EPA would not meet for the purpose of negotiating a remedy, as the EPA has a policy of not negotiating remedy selection. Van Donsel Aff., ¶ 8. Van Donsel advised Cooper that Cooper's representatives could meet with the EPA and MDNR during the public meeting. *Id.* Although Cooper denies that it ever requested a meeting with the EPA for the purpose of discussing remedy selection, Cooper does not specifically address the June 14, 1991 meeting in its legal memorandum submitted to this court. Cooper merely asserts that it never sought to negotiate remedy selection with either the EPA or MDNR.

On June 20, 1991, the public meeting for the site was held to provide the public with information about the site and to take public comments. Representatives of Cooper attended the meeting and presented their comments, and the transcript of the meeting is included in the administrative record. Robert Teets, Director of Risk Management and Environmental Affairs for Cooper, spoke at the meeting and expressed his concern that the extended public comment period was too short to allow adequate evaluation of the technical data and information concerning the Sturgis site. Teets also reiterated Cooper's request to meet with EPA consultants. Teets Aff.Ex. 7 at 40. Teets explained that Cooper desired the meeting in order "to participate more actively in [the] process ... toward seeking the most efficient options available to remediate [the] matter," and to learn more about the data gathering methods used by Warzyn to support the conclusions made in the RI/FS. *Id.*

Van Donsel responded that a private meeting with Cooper would be inappropriate during the public comment period, as the EPA was concerned that such a meeting might create a perception of impropriety. Van Donsel further advised Cooper that the EPA would be willing to address any questions aimed at seeking an explanation or clarification of the data contained in the RI/FS. Teets responded that Cooper was not requesting a private meeting, but that it nevertheless had reservations about the methods and information underlying the RI/FS and would like to meet so that those concerns could be addressed. Teets Aff.Ex. 7 at 40–41.

Pursuant to a subsequent request by Teets that Cooper be allowed to review technical documents related to the site, Van Donsel made arrangements with Warzyn to allow Cooper representatives to view the documentation at Warzyn's offices on August 5 and 6, 1991. Van Donsel Aff., ¶ 10, Teets Aff., ¶ 15 and Ex. 8. However, the EPA did not allow Cooper to view documents that the EPA considered privileged, confidential, or not in final form. Cooper was allowed to make photocopies of some information so that it could spend further time reviewing it and was provided with maps, drawings, and a copy of the computer disk containing the groundwater model. Van Donsel Aff., ¶ 10.

Before the close of the public comment period on August 12, 1991, Cooper submitted approximately 2,700 pages of comments and attachments concerning the RI/FS study, the Proposed Plan, and other information in the administrative record

file. Van Donsel Aff., ¶ 11, Teets Aff., ¶ 15. The EPA represents to this court that these submissions will be added to the administrative record. Van Donsel Aff., ¶ 11. On the final day of the comment period, Teets submitted a letter to the EPA alleging gaps in the record and recommending further studies, information, and analyses that should be pursued before a remedial action is selected. Teets Aff.Ex. 8. This letter, which contains a description of the studies recommended by Cooper, is currently part of the administrative record.

In the letter, Teets also expressed Cooper's position that the EPA and MDNR were not allowing reasonable time within which to evaluate and comment on the remedial plan proposed in the RI/FS. Teets complained that the agency's analysis of the hydrogeology of the site was not disclosed until the RI/FS was placed on file at the Sturgis Public Library at the beginning of June, 1991, and that the data underlying the groundwater model was not available until August 5 and 6, 1991. Teets further complained that some information was withheld from Cooper at the August 5 and 6 meetings on the grounds of confidentiality. Finally, the letter reiterated Cooper's "earlier requests" to meet with agency staffs to discuss "additional investigation work as well as the selection of a remedy for soils and groundwater" at the site. Teets Aff.Ex. 8. According to Cooper, it pursued this request several more times with EPA officials, whereupon the EPA responded that it had a policy of not negotiating the selection of a remedy with PRPs. Teets Aff., ¶¶ 16–17.

On September 12, 1991, Cooper submitted additional comments and asked that the public comment period be reopened. The EPA considered Cooper's request and decided not to reopen the public comment period. Nevertheless, it decided to consider Cooper's late comments under the criteria established by the NCP and to respond to the comments upon the issuance of the agency's Record of Decision. Van Donsel Aff., ¶ 12. The EPA represents to this court that, in accordance with section 9613(k) of CERCLA, it intends to respond to all significant comments received during the public comment period, including the comments submitted by Cooper, upon issuing its Record of Decision. Van Donsel Aff., ¶ 13.

On September 17, 1991, Cooper filed the instant action requesting a writ of mandamus, a temporary restraining order, and a preliminary injunction.[2] Cooper seeks a writ of mandamus directing the EPA and MDNR to provide Cooper with the right to participate in the development of the administrative record pursuant to section 9613(k)(2)(B) of CERCLA (Count I), the right to provide oral and written comments according to section 9617 of CERCLA (Count II), and the right to have EPA identify potentially responsible parties according to section 9613(k)(2)(D) of CERCLA (Count III). In addition, Cooper seeks a declaration that EPA's "non-negotiation policy" denies Cooper participation under CERCLA (Count IV). Cooper alleges that it will suffer irreparable harm if defendants select a response action or a remedial action plan without complying with the foregoing statutory duties (Count IV). Accordingly, Cooper requests that the Court enjoin defendants from issuing a ROD on the Sturgis site until defendants comply with CERCLA sections 9613(k)(2)(B), 9613(k)(2)(D), and 9617.

The gist of Cooper's complaint is that it will suffer irreparable harm if the EPA selects a remedial action and issues a Record of Decision without complying with the statutory provisions regarding public participation. This assertion rests, in part, upon section 9613(j) of CERCLA, which limits judicial review of agency action to the administrative record.[3] According to

---

**2.** Cooper's motion for a temporary restraining order was subsequently denied due to Cooper's failure to comply with the requirements of Fed. R.Civ.P. 65(b).

**3.** Section 9613(j) reads in pertinent part as follows:

**(j) Judicial review**
　(1) Limitation
　In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to

Cooper, because meaningful public participation is necessary in order to compile a fair and adequate administrative record, the lack of meaningful public participation prior to the closing of the administrative record, the selection of a remedy, and the issuance of the ROD, will prejudice Cooper's later attempts to challenge the remedy selected. Cooper argues that under the enforcement provisions of sections 9606 and 9607 of CERCLA, it may be liable for, or forced to implement, remedial actions that may not be the most cost efficient solutions or that may not fully remediate the problem. Cooper asserts that, due to its inability to conduct and place in the record further studies and analyses that could suggest a remedial action different and less expensive than the remedy proposed by the EPA, the administrative record will be devoid of the information necessary to avoid prospective liability for the response action.

## DISCUSSION

■ This Court may not grant a preliminary injunction if it lacks jurisdiction over the claim before it. *See City of Alexandria v. Helms,* 728 F.2d 643, 645–46 (4th Cir.1984); *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828, 830 (D.N.J.1989). Therefore, I must decide the jurisdictional question before evaluating plaintiff's request for injunctive relief, as the latter issue is moot if this Court is without jurisdiction.

*Subject Matter Jurisdiction*

■ In reviewing a 12(b)(1) motion, the inquiry of the Court is whether or not the challenged pleading sets forth allegations sufficient to show that the Court has subject matter jurisdiction in the case. In making this determination, the pleadings are to be taken as true and construed in a light most favorable to the party opposing

the motion. *Scheuer v. Rhodes* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court is not restricted, however, to examining only the pleadings but may review any evidence, including affidavits, to determine any disputed facts upon which the motion or the opposition to it is predicated. *See Commodities Export Co. v. United States Customs Service,* 888 F.2d 431 (6th Cir.1989); *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Should the pleader allege facts from which jurisdiction may be inferred, the motion must be denied. *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). If there are genuine issues of material fact at issue, a decision must be made on the factual questions before the motion is decided. *Commodities Export,* 888 F.2d at 436. However, if "the facts are relatively simple [and] substantially uncontroverted," as in the instant case, the court may rule on a 12(b)(1) motion without pausing to make findings on disputed questions of fact. *Id.* at 436–37.

A federal court has limited jurisdiction, and jurisdictional limits, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274, 283 (1978). With respect to CERCLA cases, Congress has specifically limited federal jurisdiction over challenges to removal or remedial actions selected under 42 U.S.C. § 9604, as well as challenges to abatement actions ordered under 42 U.S.C. § 9606(a). This jurisdictional limitation is set forth in section 9613(h) of CERCLA, which reads in pertinent part as follows:

**(h) Timing of review**

No federal court shall have jurisdiction ... to review any challenges to removal or remedial action selected under section

---

the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

(2) Standard
In considering objections raised in any judicial action under this chapter, the court shall

uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.
42 U.S.C. § 9613.

9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizen suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

■ Cooper does not contend that its suit falls within one of the five exceptions to subsection (h), and the Court finds that none of these categories provide jurisdiction over Cooper's complaint, as they apply either to suits filed after the completion of remedial action or to government enforcement actions. Further, the case law is well settled that, pursuant to section 9613(h), there is no right of judicial review of the Administrator's selection and implementation of response actions prior to the completion of the response action or the commencement of EPA enforcement. *Barmet*, 927 F.2d 289; *State of Alabama v. EPA*, 871 F.2d 1548 (11th Cir.), *cert. denied*, 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 535 (1989); *South Macomb Disposal Authority v. EPA*, 681 F.Supp. 1244, 1251 (E.D.Mich.1988).

Section 9613(h) was enacted as part of the 1986 amendments to CERCLA, and the legislative history is clear as to the purpose of this section. A relevant Senate Report states as follows:

Response actions or orders under section 104 and orders under section 106 may be subject to judicial review at the time the government seeks cost recovery or acts to enforce an order and collect penalties for noncompliance. This amendment clarifies and confirms that response actions and orders are not subject to judicial review prior to that time.

As several courts have noted, the scheme and purposes of CERCLA would be disrupted by affording review of orders or response actions prior to commencement of a government enforcement or cost recovery action. *See, e.g., Lone Pine Steering Committee v. EPA* [600 F.Supp. 1487], 22 Env't Rep.Cas. (BNA) [1113], 1118 (D.N.J. January 21, 1985). These cases correctly interpret CERCLA with regard to the unavailability of pre-enforcement review. This amendment [i.e., the addition of § 9613(h)] is to expressly recognize that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlements and voluntary cleanups.

S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985) (quoted in *Barmet*, 927 F.2d at 293). *See also* 132 Cong.Rec. S14928 (daily ed. Oct. 3 1986) (Senator Thurmond stated that section 9613(h) "is designed to preclude piecemeal review and excessive delay of cleanup.")

■ In an attempt to avoid CERCLA's jurisdictional bar, Cooper argues that section 9613(h) does not apply because it applies only to challenges to response actions. Cooper maintains that it does not challenge a response action, as no response action has yet been selected. In Cooper's view, it merely seeks the aid of this Court in requiring the EPA and MDNR to comply with their statutory duties requiring them to provide meaningful participation in the remedy selection process and to identify potentially responsible parties as early as possible before selecting a response action. In essence, Cooper attempts to avoid the

statutory bar to judicial review by characterizing its claim as a challenge to the process of remedy selection and asserting that such procedural challenges are distinct, for jurisdictional purposes, from claims that attack the EPA's choice of remedy.

The Court is not persuaded, however, that the distinctions asserted by Cooper are relevant to the question of subject matter jurisdiction, as "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute." *Schalk v. Reilly,* 900 F.2d 1091, 1097 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Moreover, Courts faced with suits alleging procedural errors in remedy selection have uniformly rejected claims that seek injunctive relief directing the EPA to supplement the administrative record and to rescind the Record of Decision. *See Alabama,* 871 F.2d 1548 and *United States v. Cordova Chemical Co. of Michigan,* 750 F.Supp. 832 (W.D.Mich.1990) (dismissing suits alleging procedural errors for lack of jurisdiction).

These decisions are supported by the legislative history of SARA. In Senator Thurmond's words, "[t]he timing of review section is intended to be comprehensive.... [It] covers *all issues that could be construed as a challenge to the response,* and limits those challenges to the opportunities specifically set forth in the section." 132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986) (emphasis added). Representative Glickman expressed the same understanding when he stated that "[t]he only opportunity for review that is not specifically provided for in the timing of review provision is the opportunity set forth in new section 121(f)(2) and (3), the cleanup standards section relating to [state challenges to enforcement actions already commenced under section 9606] and remedial actions [proposed for] facilities owned and operated by a Federal agency...." 132 Cong.Rec. H9582 (daily ed. Oct. 8, 1986). Neither of the two additional opportunities referred to

by Congressman Glickman are applicable to the instant case.

 Moreover, as evidenced by CERCLA's expansive definitions of removal and remedial actions, the ban on preimplementation review extends not only to parties' contentions that the remedy selected does not meet the substantive requirements of CERCLA, but also to procedural claims regarding the EPA's remedy selection process. *See* 42 U.S.C. § 9601(23) ("removal" includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances"); 42 U.S.C. § 9601(24) ("remedial action" includes "those actions consistent with permanent remedy taken instead of or in addition to removal actions"). The RI/FS process challenged by Cooper includes action taken "consistent with permanent remedy" of the contamination of Sturgis' municipal well field and, therefore, falls within the statute's broad definition of remedial action.

In a variation of the argument presented here, the plaintiff in *Neighborhood Toxic Cleanup Emergency v. Reilly,* 716 F.Supp. 828 (D.N.J.1989), sought an order requiring the EPA to reopen the Record of Decision and to reconsider the selected remedy in light of new information. The plaintiff alleged that the EPA failed to obtain proper data before finalizing the remedial plan and that, therefore, the safety measures to be taken at the site could prove inadequate. *Id.* at 830. The court, after an extensive analysis of CERCLA's statutory language and legislative history, held that section 9613 deprived it of jurisdiction to review the Record of Decision selecting a remedy until "either a distinct phase of that remedy is complete or until a specific remedial measure is taken in violation of some CERCLA/SARA requirement." *Id.* at 837. The court specifically based its holding on "the congressional purpose of removing litigation as an obstacle to rapid cleanup." *Id.*

 This Court finds the same principle controlling in the instant case. Cooper attempts to distinguish *Neighborhood Toxic Cleanup* and *Cordova* by arguing that the

plaintiffs in those cases sought relief after the EPA had already selected a remedy and issued a ROD, whereas Cooper seeks relief before the issuance of a ROD. However, where the underlying principle of the bar to pre-enforcement review is the need to prevent litigation that may delay rapid cleanup, the principle is no less applicable where a party seeks injunctive relief on the eve of the EPA's remedy selection and Record of Decision. Pre-enforcement judicial review, whether before or after the selection of a remedy, thwarts the purpose of prompt response intended by CERCLA.

■ Further, even assuming that the distinction between procedure and substance could be relevant in some instances, the Court concludes that a fair reading of Cooper's complaint reveals that it is the EPA's selection of a remedy, anticipated by Cooper's reading of the Proposed Plan, that is underlying Cooper's allegations of inadequacies in the administrative record. Cooper seeks to enjoin the issuance of the ROD and supplement the administrative record, not only for the purpose of enhancing its position in a later challenge to the remedy selection, but also to affect the EPA's choice of remedial action. As such, Cooper's claim contravenes the congressional mandate in section 9613(h) that challenges to remedial actions not occur until after remedial action is taken. *See Cordova,* 750 F.Supp. at 837 (underlying the allegations about inadequacies in the administrative record is a challenge to the remedy selection); *Alabama,* 871 F.2d at 1559.

■ Cooper argues that, unless I provide the relief it seeks, it will suffer an irreparable deprivation of due process, because it will have been denied the minimum due process that CERCLA requires prior to the selection of a remedy and the issuance of a ROD. However, two decisions of the Sixth Circuit have rejected claims that the lack of pre-enforcement review is a violation of due process rights. *Barmet,* 927 F.2d at 294; *J.V. Peters,* 767 F.2d at 266. None of Cooper's legal rights to contest liability have been adversely affected. In the event the EPA seeks to recover costs for the remedial action, Cooper can contest liability for the cleanup after the EPA has commenced the section 9607 action to recover costs. Cooper "can suffer no deprivation until the adjudication of the section [9607] litigation ... and [it] will have full opportunity to argue liability at that time." *J.V. Peters,* 767 F.2d at 266.

■ Cooper argues that the adjudication of section 9607 liability comes too late to curb the expenses of a remedial measure that may be inefficient and ineffective. A similar argument was made and rejected in *J.V. Peters,* which noted that "[t]he government's right to recover ... will be limited by the requirement that costs be 'not inconsistent with the national contingency plan' ... [which requires that] remedial action measures be cost-effective." 767 F.2d at 266 (quoting *Bulk Distribution Centers v. Monsanto Co.,* 589 F.Supp. 1437, 1443 n. 15 (S.D.Fla.1984)); *see* 42 U.S.C. § 9613(j)(3) and 9607(a)(4)(A)–(B). Moreover, insofar as the EPA, pursuant to section 9606, seeks to compel Cooper to undertake the response action itself, Cooper can seek reimbursement for any response action expenses to the extent that the action ordered was "arbitrary or capricious" or "otherwise not in accordance with law." 42 U.S.C. § 9606(b)(2)(D).

While I am sympathetic to Cooper's allegation that an inadequate administrative record may weaken its ability to defend itself from liability or to seek reimbursement, the Court's lack of jurisdiction at this time does not foreclose Cooper from challenging the administrative record at a later date. Section 9613(j)(4) of CERCLA specifically provides that a court "may disallow costs or damages" for procedural errors "so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made." 42 U.S.C. § 9613(j)(4). Moreover, although later judicial review is generally limited to the administrative record, "section 9613(j) does not foreclose the addition of materials to supplement the administrative record." *Barmet,* 927 F.2d at 294. "Otherwise applicable principles of administrative law shall govern whether any supplemental ma-

terials may be considered by the court." 42 U.S.C. § 9613(j)(1).

■ As a result of section 9613(h) of CERCLA, I find that I cannot reach the merits of Cooper's claims regarding inadequacies in the administrative record and must dismiss Cooper's complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). Furthermore, none of the other bases of jurisdiction asserted by Cooper—the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–705, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus and Venue Act, 28 U.S.C. § 1361—entitle Cooper to judicial review where, as here, Congress has specifically limited the jurisdiction of federal courts.

*Jurisdiction under the Administrative Procedures Act*

■ "The APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review,' 5 U.S.C. § 701(a)(1)." *Block v. Community Nutrition Inst.,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270, 275 (1984). I have already concluded that, due to the express language of section 9613(h) and the objectives intended by Congress, CERCLA precludes federal court jurisdiction over Cooper's claim. Accordingly, review of Cooper's claim is not available under the APA.

Further, this conclusion is consistent with other cases holding that challenges to remedial action plans or pre-cleanup activities, brought prior to the commencement of government enforcement or recovery actions, are not cognizable under the APA. *See Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1013–14 (3rd Cir.1991) ("The plain language of CERCLA § 113 shows that Congress intended to deny the district courts jurisdiction to hear complaints challenging the EPA's Superfund clean-up or preclean-up activities, even if a statute other than CERCLA ordinarily would create a federal claim."); *Schalk,* 900 F.2d at 1097; *J.V. Peters,* 767 F.2d 263.

*Jurisdiction or Relief under the Mandamus and Venue Act*

■ Plaintiff also asserts jurisdiction and seeks relief pursuant to 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." For similar reasons discussed *supra,* the Mandamus Act and Venue Act (Mandamus Act) does not provide an independent basis for this Court to exercise subject matter jurisdiction over plaintiff's complaint. Even if the Court could find jurisdiction, plaintiff's action under section 1361 would fail because other remedies are available.

The Supreme Court has narrowly circumscribed the scope of the mandamus remedy. The Court has held that the common law doctrine of mandamus, as codified in 28 U.S.C. § 1361, "is intended to provide a remedy for a plaintiff only if he [sic] has exhausted all other avenues of relief and only if the defendant owes him [sic] a clear nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622, 637 (1984) (citations omitted). "When it codified the remedy in the Mandamus Act, Congress did not intend to modify the doctrine of exhaustion of administrative remedies." *Hironymous v. Bowen,* 800 F.2d 888, 891 (9th Cir.1986).

The Sixth Circuit has treated the exhaustion requirement as an element of mandamus jurisdiction and found a lack of subject matter jurisdiction when the requirement was not met. *Bisson v. Secretary of Health and Human Services,* 787 F.2d 181, 185 (6th Cir.1986). In *Hironymous,* the Ninth Circuit held that "only when a plaintiff has failed to exhaust administrative remedies *made exclusive by statute* will a court generally be deprived of jurisdiction." *Hironymous,* 800 F.2d at 892 (emphasis added). The Ninth Circuit was referring to statutes that specifically outlined the administrative remedies available and that limited judicial review exclusively

to claims exhausted according to the designated administrative process. *Id; see* 42 U.S.C. § 405(g), (h) of the Social Security Act. Where the statute does not provide the exclusive avenue for reviewing claims, the court held, there is mandamus jurisdiction and the court has discretion in its application of the exhaustion doctrine. *Id.*

In CERCLA, Congress has not designated specific administrative remedies for claimants who seek to compel agency compliance with 42 U.S.C. § 9613(k) or 42 U.S.C. § 9617. Nor has Congress reserved to the EPA an exclusive administrative avenue of appeal for parties who seek to challenge the adequacy of the administrative record or public participation. Thus, following the Ninth Circuit's rationale, this Court may have jurisdiction pursuant to the Mandamus Act. However, Congress did provide explicitly for the *timing* of judicial review by limiting "any challenges to removal or remedial action" to claims brought after the completion of the response action or the commencement of EPA enforcement. 42 U.S.C. § 9613(h). Consequently, when Congress struck the balance between the need for immediate judicial review and the need for prompt cleanup of hazardous wastes, Congress provided that an exclusive administrative process must transpire before judicial review is available.

As discussed *supra*, to the extent that plaintiff will suffer injury because the remedial action ultimately selected will be inconsistent with or in violation of the requirements of CERCLA, judicial review is still available. Based on the record before me, the opportunity for later review, and the congressional intent to avoid delaying the administrative process at this stage, I find mandamus jurisdiction unwarranted. Accordingly, this Court declines to exercise its discretion to entertain plaintiff's preenforcement claim under the Mandamus Act.

*Relief under the Declaratory Judgment Act*

■ Finally, plaintiff also seeks relief pursuant to 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." While the courts do not generally proscribe relief under the Declaratory Judgment Act when other avenues of relief are available, "the declaratory judgment procedure will not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review." *Public Service Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291, 297 (1952).

In this case, the EPA has not made a final decision regarding the remedial action plan to be instituted. Nothing more than a proposal has been issued, and it is still under review. As already discussed, Congress has explicitly provided for the timing of judicial review. A ruling at this time regarding the adequacy of the administrative record or the public participation provided would be premature, would serve no useful purpose, and, in fact, would retard the expeditious means for instituting governmental relief that Congress intended to create under CERCLA. *See also Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1390 (5th Cir.1989) (declaratory judgment actions would be incompatible with the design of CERCLA and the discretion granted to the EPA in carrying out the statute).

Because this Court is without subject matter jurisdiction, defendants' motion to dismiss is granted and judgment is entered in their favor. Accordingly, Cooper's motions for a writ of mandamus and preliminary injunction are denied as moot.