

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-1994

# United States of America v. Princeton Gamma-Tech, Inc.

Precedential or Non-Precedential:

Docket 91-0080

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"United States of America v. Princeton Gamma-Tech, Inc." (1994). *1994 Decisions.* Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES OF AMERICA,
                              Appellee
          v.

PRINCETON GAMMA-TECH, INC.,
          Defendant/Third-Party Plaintiff

JEFFREY SANDS; 206 CENTER, INC.; HILTON REALTY COMPANY OF
PRINCETON, INC. (GEORGE SANDS & JEFFREY SANDS t/a HILTON REALTY
COMPANY OF PRINCETON, INC.); GEORGE SANDS; ESTELLE SANDS; FIFTH
DIMENSIONS, INC.; J & R ASSOCIATES, LTD.; PRINCETON CHEMICAL
RESEARCH, INC.; CORNELIUS VAN CLEEF; FREDERICK DECICCO; JOSEPH A.
BAICKER; ALDEN SAYRES; ABC CO. (1-100), JOHN DOE (1-100), XYZ CO.
(1-100), JANE DOE (1-100),
                    Third-Party Defendants

          PRINCETON GAMMA-TECH, INC., Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 91-00809)
_____

Argued January 27, 1994

Before:  MANSMANN, NYGAARD, and WEIS, Circuit Judges

Filed August 1, 1994
_____

A. Patrick Nucciarone, Esquire (ARGUED)
Bruce W. Clark, Esquire
Robert D. Rhoad, Esquire
Dechert Price & Rhoads
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, New Jersey  08543-5218

Jeffrey A. Cohen, Esquire
Hannoch Weisman
4 Becker Farm Road

1

Roseland, New Jersey  07068

Attorneys for Appellant Princeton Gamma-Tech, Inc.

Evelyn S. Ying, Esquire (ARGUED)
Myles E. Flint, Esquire
Acting Assistant Attorney General
Anne S. Almy, Esquire
Daniel W. Dooher, Esquire
Department of Justice
Environment & Natural Resources Division
Washington, D.C.  20530

Of Counsel:
Dawn Messier, Esquire
Office of General Counsel
U.S. Environmental Protection Agency
Washington, D.C.  20460

Amelia M. Wagner, Esquire
Assistant Regional Counsel, Region II
U.S. Environmental Protection Agency
New York, New York  10278

Attorneys for the United States of America


Henry N. Portner, Esquire
Portner, Greenberg & Associates
429 Main Street
P. O. Box 322
Harleysville, PA  19438

Steven F. Baicker-McKee
Babst, Calland, Clements & Zomnir
Two Gateway Center
8th Floor
Pittsburgh, PA 15222

Attorneys for Appellees

_____

OPINION OF THE COURT
_____



WEIS, Circuit Judge.

2

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended, limits judicial review of Environmental Protection Agency (EPA) cleanup programs. However, we conclude that when the EPA sues to recover initial expenditures incurred in curing a polluted site, a district court may review a property owner's bona fide allegations that continuance of the project will cause irreparable harm to public health or the environment and, in appropriate circumstances, grant equitable relief. Because the district court in this case believed that it lacked jurisdiction under these circumstances, we will reverse its order denying injunctive relief.

Defendant Gamma-Tech owns real property above the Passaic Formation aquifer in Rocky Hill, New Jersey. After trichloroethylene (TCE) contamination was discovered in the groundwater at two sites on Gamma-Tech property, they were placed on the National Priorities List, a list of hazardous waste sites that require the use of Superfund money under CERCLA. See 42 U.S.C. § 9605(a)(8)(B). In 1984, the EPA arranged for a remedial investigation and feasibility study preliminary to cleaning up the contamination. The agency issued its first Record of Decision in 1987 calling for installation of an alternative water supply and sealing of private wells at one site.

After further investigation and monitoring of the contamination, the EPA issued a second Record of Decision in 1988 outlining its plan for a remedy. In brief, the EPA proposed to extract contaminated water from the primary contamination plume in the shallow aquifer, to treat it, and then to reinject it into

the aquifer. In addition, the plan provided for the installation of "open-hole" wells that penetrate through the shallow source to the deep aquifer to allow for monitoring and sampling. After the decision was announced, the public and potentially responsible parties were given the opportunity to comment on the plan.

At least some of the proposed wells have already been installed on the property, but the pump treatment system has not yet been fully implemented. The final design was expected to be completed in the fall of 1993 and the remedial process begun in the spring of 1994. It is anticipated that the cleanup will be completed in five to seven years.

In 1991, the EPA brought suit against Gamma-Tech pursuant to CERCLA, 42 U.S.C. § 9607(a), seeking reimbursement of "response costs" already incurred at the two sites. The agency also sought a declaratory judgment on Gamma-Tech's liability for future response costs.

Gamma-Tech filed a cross-motion for a preliminary injunction directing the EPA to cease the installation of open-hole wells into the deep layer of the aquifer, to encase existing open-hole wells, and to cease construction of the remedial system provided for in the 1988 decision (the water extraction and treatment plan). In support of its motion, Gamma-Tech asserted that the EPA's selected remedy will exacerbate the existing environmental damage and cause further irreparable harm to the environment. According to Gamma-Tech, the system devised by the EPA will cause contaminated water from the shallow strata of the aquifer to be drawn down into the deep zone where contamination

4

has not been established conclusively, thus increasing, rather than remedying, the pollution of the water supply.

The district court concluded that it lacked subject matter jurisdiction to grant Gamma-Tech's request for injunctive relief. The court based its conclusion on the general principle, garnered from statutory and decisional law, that district courts have no jurisdiction over claims challenging the EPA's choice of remedies until after completion of a distinct phase of the cleanup.

Appealing under 28 U.S.C. § 1292(a)(1), Gamma-Tech asserts that once the EPA brought its cost-recovery suit under CERCLA, the general jurisdictional bar to the review of challenges was lifted pursuant to the cost-recovery action exception under 42 U.S.C. § 9613(h)(1). The district court thus had authority to grant an injunction even though the remedial work has not yet been completed. Gamma-Tech also contends that it was denied due process and that the district court erred in denying leave to file a supplemental pleading adding claims for damages.

I.

By enacting CERCLA, Congress intended to combat the hazards that toxic waste sites pose to public health or the environment. The EPA was granted broad powers to eliminate or reduce toxic contamination in the environment by either requiring responsible parties to clean up the sites, 42 U.S.C. § 9606, or by undertaking the task itself, 42 U.S.C. § 9604.

5

Because of the menace to public health and the environment, Congress was anxious to safeguard EPA remedial efforts from delay resulting from litigation brought by potentially responsible parties. See Lone Pine Steering Comm. v. EPA, 777 F.2d 882, 886-87 (3d Cir. 1985); Wheaton Indus. v. EPA, 781 F.2d 354, 356 (3d Cir. 1986). In the Superfund Amendments and Reauthorization Act of 1986 (SARA), Congress adopted a "clean up first, litigate later" philosophy. See 132 Cong. Rec. 28,409 (1986) (statement of Sen. Stafford) (Congress wanted to avoid "specious suits [that] would slow cleanup and enable private parties to avoid or at least delay paying their fair share of cleanup costs.").

SARA generally bars preliminary judicial review of challenges to the EPA's response actions. 42 U.S.C. § 9613(h), entitled "Timing of review," provides in pertinent part:

> "No Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under section 9604 . . . in any action except one of the following:
>
> (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
>
>       *   *   *
>
> (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under 9606 of this title was in violation of any requirement of this chapter. . . ."

6

The language in section 9613(h) demonstrates Congress' intent that the EPA be free to conduct prompt and expeditious cleanups without obstructive legal entanglements. By providing several exceptions to the timeliness bar, however, Congress recognized that the limitation on court challenges should not be absolute.

We now examine the exceptions listed in subsections 9613(h)(1) and (h)(4) in greater detail to determine when those exceptions would serve to lift the jurisdictional bar to challenges to response actions. In so doing, we note that it is helpful to bear in mind that the word "jurisdiction" has a variety of meanings and can refer to a court's power to review a matter in any aspect, or to a limited degree, or in a specified venue, or by restricting the time when an action can be brought.

A. Cost-Recovery Action Exception Under Subsection 9613(h)(1).

The exclusion under subsection 9613(h)(1) retains jurisdiction in the federal courts after a cost-recovery or contribution action has been brought by the government under 42 U.S.C. § 9607 of CERCLA. Section 9607 permits the EPA to sue a potentially responsible party for reimbursement of response costs.[0]

It is the cost-recovery suit that opens the door for alleged responsible parties to contest their liability as well as to challenge the EPA's response action as being unnecessarily

---

[0] 42 U.S.C. § 9601(25) defines the terms "respond" or "response" as meaning: "[R]emove, removal, remedy, and remedial action, all such terms (including the terms `removal' and `remedial action') include enforcement activities related thereto."

7

expensive or otherwise not in accordance with applicable law. See 42 U.S.C. § 9607(a)(4)(A) (permits challenges against costs inconsistent with National Contingency Plan); id. § 9607(b) (sets out defenses to liability); id. § 9613(j)(2) (arbitrary and capricious standard of review applies to response actions). The language in subsection 9613(h)(1), the corresponding legislative history, and relevant caselaw establish that once the EPA brings an enforcement action under section 9607, the agency is subject to challenges to its response action.

Courts have held that liability and cost-effectiveness suits filed by potentially responsible parties to challenge a selected response plan were premature when the EPA had not yet sought enforcement through a cost-recovery action. Those opinions describe the suit for reimbursement of response costs as the opportunity for challenging the EPA's remedial or removal decisions. See Reardon v. United States, 947 F.2d 1509, 1512 (1st Cir. 1991) (en banc) (section 9613(h) precludes "review of `innocent landowner' and `overbroad lien' claims prior to the commencement of an enforcement or recovery action"); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1390 n.21 (5th Cir. 1989) ("`[O]nce the cost-recovery action is brought, the alleged responsible party can assert all its statutory and nonstatutory defenses and can obtain a complete declaration of its rights and liabilities.'" (quoting B.R. MacKay & Sons, Inc. v. United States, 633 F. Supp. 1290, 1297 (D. Utah 1986))); Barmet Aluminum Corp. v. Reilly, 927 F.2d 289, 295 (6th Cir. 1991) (CERCLA scheme "merely serves to effectuate a delay in a

8

plaintiff's ability to have a full hearing on the issue of liability and does not substantively affect the adequacy of such a hearing"); Dickerson v. EPA, 834 F.2d 974, 978 (11th Cir. 1987) (property owner may contest cost effectiveness of the EPA remedy as soon as cost-recovery suit is brought).

Legislative history similarly indicates that review of challenges is available once a cost-recovery action is brought. "Therefore, the [section 9613(h)] amendment reaffirms that, in the absence of a government enforcement action, judicial review of the selection of a response action should generally be postponed until after the response action is taken." H.R. Rep. No. 99-253 (III), 99th Cong., 2d Sess. 22, reprinted in 1986 U.S.C.C.A.N. 3038, 3045. One member of Congress noted that

> "[w]hen the essence of a lawsuit involves contesting the liability of the plaintiff for cleanup costs, the courts should apply the other provisions of section [9613(h)], which require such plaintiff to wait until the Government has filed a suit under [sections 9606 or 9607] to seek review of the liability issue."

132 Cong. Rec. 29,754 (1986) (statement of Rep. Roe).

The pattern of precluding review of challenges until a cost-recovery action is brought is clear enough where the EPA does not file suit until after all of its work has been completed. Congress, however, authorized the EPA to seek reimbursement for costs even before the conclusion of the cleanup process. 42 U.S.C. § 9613(g)(2) permits a cost-recovery action to be brought as soon as "costs have been incurred."

9

The question thus becomes whether the exception under subsection 9613(h)(1) would lift the bar to challenges against response actions even where the EPA brings a cost-recovery suit before cleanup is complete, as is permitted under subsection 9613(g)(2). Because an interim decision on costs may affect the completion of the project, such suits introduce an additional factor into the jurisdictional question.

Nothing in the timeliness language of either subsections 9613(g)(2) or 9613(h)(1) indicates any differentiation between the scope of an action where all the remedial work has been completed and one filed while the project is still in progress. Section 9607(a)(4)(A) does limit a party's liability in a cost-recovery action, however, to costs "incurred." Thus, in an action brought before a project has been completely carried out, reimbursement is limited to expenses "incurred" before the date of judgment, leaving to future litigation costs that come due thereafter.

Once it has been established that subsection 9613(h)(1) applies and that review under that exception is available, a court must then resolve the question of what types of challenges may be considered and what remedies are available. Although the statute makes no distinction between cost-recovery suits brought after completion of a project and those brought while work is continuing, the remedies may differ because of the possibility of affecting future work at a site.

42 U.S.C. § 9607(b) sets out defenses to liability vel non as contrasted with disputes over the amount of the claim due

10

or the legality of the remedy selected. In United States v. Hardage, 982 F.2d 1436, 1446 (10th Cir. 1992), the Court held that a responsible party may contest EPA expenditures as well as its liability in a response action. In that case, the Court of Appeals, citing section 9607(a)(4)(A), concluded that a person found to be a responsible party may nevertheless contest payment of expenses resulting from a remedial action that is inconsistent with the National Contingency Plan. Id. at 1443, 1447.

Pursuant to 42 U.S.C. § 9605, the EPA has published a National Contingency Plan for the effective removal of hazardous substances in 40 C.F.R. pt. 300, regulations that set out procedures for the selection of response actions. These regulations direct the EPA to evaluate alternative remedies, weighing such factors as the overall protection of human health and the environment, long-term effectiveness, reduction of toxicity through treatment, potential environmental impacts of the remedial action, cost feasibility, and availability of services and materials, among others. See id. §300.430(e)(9)(iii)(A)-(I), .430(f)(1)(i). Remedial actions inconsistent with the policy objectives of the National Contingency Plan may be challenged in defending a cost-recovery action. 42 U.S.C. § 9607(a)(4)(A).

Potentially responsible parties may also defend cost-recovery actions on the ground that the EPA's decision in the selection of a response action was "arbitrary and capricious or otherwise not in accordance with law." 42 U.S.C. § 9613(j)(2).

11

When a defense on these grounds is successful, the available remedies are listed in section 9613(j)(3):

> "[T]he court shall award (A) only the response costs or damages that are not inconsistent with the national contingency plan, and (B) such other relief as is consistent with the National Contingency Plan."

42 U.S.C. § 9613(j)(3). The language of that section makes it clear that the available remedies are not limited to a mere reduction of the amount recoverable for expenditures, but may also include any relief consistent with the National Contingency Plan.

B.  Citizens' Suit Exception Under Subsection 9613(h)(4)

An indication of the scope of judicial review contemplated by Congress may be found in another exception to the jurisdictional bar -- the citizens' suit provisions of subsection 9613(h)(4). 42 U.S.C. § 9659 authorizes any person, including a potentially responsible party, to sue the government on allegations that the EPA violated a regulation or requirement of the Act or failed to perform non-discretionary acts or duties. Some notice requirements are also imposed in section 9659(d)-(e). The district court is given authority to enforce CERCLA standards or regulations, to direct action necessary to correct the violation, and to impose civil penalties. Id. § 9659(c).

Subsection 9613(h)(4) grants a district court jurisdiction to review challenges raised by a citizens' suit, but some doubt exists about when such a suit may be entertained. The

12

legislative history on that point is confusing, and the issue is a troublesome one that has been the subject of several appellate opinions.

In Schalk v. Reilly, 900 F.2d 1091, 1095 (7th Cir. 1990) and Alabama v. EPA, 871 F.2d 1548, 1557 (11th Cir. 1989), the Courts of Appeals decided that even if a remedy or a discrete phase of a remedy has been selected by the EPA, no citizens' suit challenge may be recognized before the remedy has been completed. The opinions in those two cases noted that the language of the citizens' suit exception of section 9613(h)(4) applies only to those "removal or remedial action[s] taken under section 9604 [response actions by EPA] . . . or secured under section 9606 [abatement order] . . . ." Schalk, 900 F.2d at 1095 (emphasis in original); see Alabama v. EPA, 871 F.2d at 1557. Noting the statute's use of the past tense, the Courts of Appeals stated that absent clear legislative intent to the contrary, the statutory language establishes that the remedial action must already have been implemented and completed before challenges can be made against it. Id.

In the Schalk case, incineration had been selected as the form of remedy, but had not yet been put into operation. In those circumstances, the Court concluded that it lacked jurisdiction to consider a citizens' suit in which it was alleged that the EPA had violated the National Contingency Plan by failing to prepare an environmental impact statement. Schalk, 900 F.2d at 1095; see also Alabama v. EPA, 871 F.2d at 1556 (citizens' suit alleged EPA failed to comply with notice and

13

comment provision); <u>Arkansas Peace Ctr. v. Arkansas Dep't of Pollution Control & Ecology</u>, 999 F.2d 1212, 1216-19 (8th Cir. 1993) (citizens' suit alleged incineration remedy failed to meet EPA regulations), <u>cert. denied</u>, ____ U.S. ____, 114 S. Ct. 1397 (1994).

Although these interpretations of the timing of the review of citizens' suits have superficial pertinency, none of the Courts of Appeals were confronted with bona fide assertions of irreparable environmental damage resulting from violations of CERCLA's policies.[0]  In circumstances where irreparable environmental damage will result from a planned response action, forcing parties to wait until the project has been fully completed before hearing objections to the action would violate the purposes of CERCLA.  This concern was articulated in congressional deliberations and elicited conflicting statements by members of the conference committee that was convened to resolve differences between the Senate and House versions of SARA.

Whether a challenge raised in a citizens' suit may be reviewed under subsection 9613(h)(4) depends upon whether the challenge is directed at remedial action that is "taken" or "secured" in violation of the statute.  42 U.S.C. § 9613(h)(4).

---

[0]<u>Boarhead Corp. v. Erickson</u>, 923 F.2d 1011 (3d Cir. 1991), discussed allegations that the response action would cause irreparable harm to historic artifacts and did not involve a situation where EPA action caused injury to the environment in violation of CERCLA.  <u>See</u> <u>id</u>. at 1023.

In discussing the proper timing of a citizens' suit, some courts have quoted the comments of Senator Thurmond, who stated:

> "`Taken or secured,' [in section 9613(h)(4)] means that all of the activities set forth in the record of decision which includes the challenged action have been completed. . . . The section is designed to preclude lawsuits by any person concerning particular segments of the response action . . . until those segments of the response have been constructed and given the chance to operate and demonstrate their effectiveness in meeting the requirements of the act. Completion of all of the work set out in a particular record of decision marks the first opportunity at which review of that portion of the response action can occur."

132 Cong. Rec. 28,441 (1986). For comments along similar lines in the House debate, see 132 Cong. Rec. 29,736 (1986) (statements of Rep. Glickman).

These statements, however, must be contrasted with those made by other conferees. For example, Senator Stafford, the Chairman of the Committee on Environment and Public Works (the Senate Committee primarily responsible for the bill) warned: "It is crucial, if it is at all possible, to maintain citizens' rights to challenge response actions, or final cleanup plans, before such plans are implemented even in part because otherwise the response could proceed in violation of the law and waste millions of dollars of Superfund money before a court has considered the illegality. . . . [C]itizens asserting a true public health or environmental interest in the response cannot obtain adequate relief if an inadequate cleanup is allowed to proceed . . . ."

Id. at 28,409. For similar statements made in the House debates, see id. at 29,754 (statement of Rep. Roe).

In his comments, Senator Mitchell noted the difference between responsible parties whose interests are purely financial

and citizens or responsible parties whose concerns are with

public health or environmental damage.  The Senator said:

> "Clearly the risk to the public health is
> more of an irreparable injury than the
> momentary loss of money. . . . The public,
> however, has no recourse if their [sic]
> health has been impaired.  For this reason,
> courts should carefully weigh the equities
> and give great weight to the public health
> risks involved."

Id. at 28,429.

Another conferee, Representative Florio spoke to the

point:

> "A final cleanup decision, or plan,
> constitutes the taking of action at a site,
> and the legislative language makes it clear
> that citizens' suits under [section 9659]
> will lie alleging violations of law and
> irreparable injury to health as soon as --and
> these words are a direct quote [from
> subsection 9613(h)(4)] -- `action is taken.'"

Id. at 29,741.

From these conflicting views of the members of Congress

who directly participated in the drafting of the statute, one

might be tempted to resort to the wag's statement that, when the

legislative history is unclear, one should refer to the language

of the statute.  However, in this instance it must be conceded

that the term "action taken" in subsection 9613(h)(4) does not

speak in clear terms either.  See Neighborhood Toxic Cleanup

Emergency v. Reilly, 716 F. Supp. 828, 833 (D.N.J. 1989) ("[T]he

statute's language fails to answer the question of how much must

be done before review is available.").

16

Senator Stafford's comments supply a pragmatic guideline to interpretation.  He said that
"the courts must draw appropriate distinctions between dilatory or other unauthorized lawsuits by potentially responsible parties involving only monetary damages and legitimate citizens' suits complaining of irreparable injury that can be only addressed only [sic] if a claim is heard during or prior to response action."

132 Cong. Rec. 28,409 (1986); see also Cabot Corp. v. EPA, 677 F. Supp. 823, 829 (E.D. Pa. 1988) (recognizing differences between compensatory and irreparable injury in selecting proper remedies under subsections 9613(h)(1), (h)(4)).

The problem may be illustrated by an extreme scenario that has the EPA deciding to take leaking drums containing a highly toxic substance from a dump site and to empty them into a nearby lake, thus causing permanent damage to public health and the environment.  If citizens cannot prevent such dumping from taking place, no effective remedy exists.

The citizens' suit provision is effectively nullified if litigation must be delayed until after irreparable harm or damage has been done.  In such circumstances, a statutory interpretation that calls for the full completion of the plan before review is permitted makes the citizens' suit provision an absurdity.  That conclusion is further supported by the language of 42 U.S.C. § 9659(c) authorizing equitable relief, in that a court may "enforce" a regulation or "order" an officer to perform a specific duty.  Invoking those powers would affect future

17

actions by the agency.  See the musings in North Shore Gas Co. v. EPA, 930 F.2d 1239, 1245 (7th Cir. 1991) (in some cases, section 9613(h) would do more than affect the "timing" of judicial review; it would extinguish it).

Several district courts have grappled with the timing of review under the citizens' suit exception and have reached inconsistent results in cases where irreparable harm to public health or the environment was alleged.  Cabot Corp., 677 F. Supp. at 829, for example, concluded that "[h]ealth and environmental hazards must be addressed as promptly as possible rather than awaiting the completion of an inadequately protective response action."  In Neighborhood Toxic, 716 F. Supp. at 834, the court commented that even where there are allegations that a remedial plan is unsafe to public health, review of a citizens' suit is only allowed after the first phase of the cleanup is complete. In that case, however, plaintiffs did not assert that they could prove environmental harm, but merely demanded that the EPA perform a public health study to support its choice of remedy. Id. at 829.

In the Courts of Appeals cases previously cited, where the citizens' suits were held to be premature, allegations of genuine irreparable damage were not discussed and presumably were not present.  The issue presented here appears to be a case of first impression in the appellate courts.  With this general background on the law, we review the parties' contentions.

II.

Gamma-Tech asserts that when the EPA filed the suit for response costs, the district court obtained jurisdiction, including its inherent injunctive powers, over all challenges to the government's selection of a remedy for the polluted site. Although it relies on subsection 9613(h)(1), Gamma-Tech asserts that the citizens' suit exception in subsection 9613(h)(4) supports justiciability of contentions that the EPA's action violates CERCLA by being inconsistent with the National Contingency Plan.[0] Gamma-Tech also maintains that the Due Process Clause requires a party to be given an opportunity to prevent irreparable harm before it occurs.

The EPA argues that its cost-recovery action seeks only reimbursement for the actual expenditures incurred as of the time of the suit, and that subsection 9613(h)(1) does not permit challenges to portions of a response action not yet completed and for which costs have not yet been incurred. Moreover, the EPA contends that courts do not have the power to grant equitable relief in a section 9607 cost-recovery action.

The EPA does concede that Gamma-Tech may contest its liability for actual costs claimed by the government that are inconsistent with the National Contingency Plan. However, relying on this Court's opinion in <u>Boarhead Corp. v. Erickson</u>,

---

[0] Gamma-Tech's position is somewhat equivocal. In its brief, Gamma-Tech relied on subsection 9613(h)(4) jurisdiction, but at oral argument stated that it based its claim only on subsection 9613(h)(1). However, the issue we address is the jurisdiction of the district court at the time it entered its order.

923 F.2d 1011 (3d Cir. 1991), the EPA maintains that because the remedy has not yet been fully implemented, the citizens' suit provision does not permit judicial review despite allegations of irreparable harm.

In Boarhead, a property owner sought to enjoin the EPA's cleanup activities until the agency conducted appropriate reviews under the National Historic Preservation Act. We held that CERCLA's jurisdictional provisions prevailed over the Preservation Act. Id. at 1023.

Boarhead is clearly distinguishable and does not control the matter before us for two crucial reasons. First, Boarhead was brought by a property owner and was not, as here, a suit brought by the government where the exception in subsection 9613(h)(1) comes into play. Second, the case before us is based on allegations that the EPA has violated and will continue to violate CERCLA itself, not another unrelated statute -- a point that the Court noted and did not decide. See id. at 1019 n.13. Consequently, Boarhead and the other previously cited cases where the property owners brought suit prematurely do not govern a court's power to grant injunctive relief in the circumstances where there are allegations that the EPA's action will cause irreparable harm inconsistent with the National Contingency Plan.

In assessing the scope of review and the availability of remedies in this cost-recovery action, it is important to clarify just what it is that the EPA seeks in this suit. The complaint alleges that, as of September 28, 1990 (approximately five months before the complaint was filed), disbursements by the

20

government amounted to at least $1,816,151. The EPA seeks this sum and, in addition, all response costs incurred "as of the date of judgment."

The EPA, therefore, seeks reimbursement for part of the expense of implementing the pumping and treating remedy that is scheduled to be in operation before this case returns to the district court. When the case reaches trial, some costs will have been incurred for every phase of the remedial plan, although only a portion of the anticipated expenses for the pump treatment processing will have been incurred by then.

That being so, Gamma-Tech is free to challenge those phases that have been completed and also that portion of the remedial plan that has not yet been fully completed as of the date of judgment, but for which some expenses have been incurred. The timeliness requirement of section 9613(h) has been met as to everything claimed as of the date of judgment. We thus have no need to consider here whether under different circumstances, the commencement of a cost-recovery action under section 9607 would allow challenges to all aspects of the remedial plan even if no expenses have been incurred for a specific phase to come into effect in the future.

The next issue is the scope of the relief that Gamma-Tech may obtain. Compliance with the National Contingency Plan criteria previously mentioned (e.g., protection of public health and the environment, including the overall feasibility of the plan) is a substantial factor in determining what costs the EPA may recover from Gamma-Tech. As noted earlier, section

21

9613(j)(3) outlines the scope of the remedy that the district court may grant. If the response the EPA has selected is determined to be arbitrary and capricious, or "otherwise not in accordance with law," the court is only permitted to award the response costs that are consistent with the National Contingency Plan. The court may also grant "such other relief as is consistent with the National Contingency Plan." 42 U.S.C. §9613(j)(3) (emphasis added).

Notably, section 9613(j)(3) does not exclude injunctive relief as a remedy. The broad language "such other relief" implies the contrary. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982) ("[A] major departure from the long tradition of equity practice should not be lightly implied."); Califano v. Yamasaki, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."); Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-92 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes.").

Therefore, if the response selected by the EPA is inconsistent with the National Contingency Plan -- for example, the remedial plan is harmful to public health -- nothing in the statute prohibits a court from utilizing its inherent power to direct the agency to cease the harmful practice and, in addition,

22

to deny claims for expenses incurred to that point in carrying out that phase of the remedy.

Permitting the EPA to continue with actions that have been found to be inconsistent with the National Contingency Plan would be contrary to the spirit and intent of CERCLA. The Act is designed to facilitate the cleanup of hazardous waste sites, but that process must be conducted by methods that meet specified criteria. Thus, in some circumstances, granting injunctive relief would be consistent with the National Contingency Plan pursuant to the provisions of section 9613(j)(3) and, in fact, injunctions may be required to insure compliance with the Plan. We therefore reject the EPA's contention that injunctions, per se, are barred in a suit for response provisions costs.

Cadillac Fairview/California, Inc. v. Dow Chem. Co., 840 F.2d 691 (9th Cir. 1988), is not to the contrary. In that case, a private entity sought an injunction directing other parties to commence cleanup operations. In considering the interplay between section 9606 that allows only the government to seek an order directing cleanup and section 9607 that arguably only calls for reimbursement of costs, the Court held that section 9607 did not confer a private right of action. Id. at 697. To the same effect, see New York v. Shore Realty Corp., 759 F.2d 1032, 1049 (2d Cir. 1985).

Those situations are quite different from the one presented here, and the Courts' opinions in those cases did not discuss the remedies provision in section 9613(j)(3). Moreover, the injunctive relief sought in Cadillac Fairview was not

23

directed against the federal government in its capacity as a regulator, but merely as the owner of a hazardous waste site.

Both parties have cited to the citizens' suit provision in subsection 9613(h)(4) as support for their respective positions. Even though it is a potentially responsible party, Gamma-Tech could qualify as a plaintiff in a citizens' suit alleging irreparable harm to the environment. Hence, Gamma-Tech argues that as a defendant in the EPA's cost-recovery suit, it should be permitted to allege matters that would normally be considered in a separate citizens' suit.

The EPA, on the other hand, takes the position that a citizens' suit will not lie in the circumstances presented here because the remedial action at the pollution site has not yet been completed. The EPA relies on such cases as Schalk, Alabama v. EPA, and Arkansas Peace Ctr. As we noted earlier, however, we find the holdings in those cases to be inapposite to the facts presented here, where bona fide assertions of irreparable environmental damage were made.

We are persuaded that when irreparable harm to public health or the environment is threatened, an injunction may be issued under the citizens' suit exception of subsection 9613(h)(4) even though the cleanup may not yet be completed. As discussed earlier, delay in preventing such injury is contrary to the objectives of CERCLA and results in the evisceration of the right to the remedy envisioned by the citizens' suit provision. We are convinced that Congress did not intend such a result.

It follows that if the section 9613(h)(4) exception

24

allows an injunction to be issued in a separate citizens' suit that is filed simultaneously in the same court with an answer[0] to a cost-recovery action for which review is available under section 9613(h)(1), there is no logical basis to deny similar relief in the cost-recovery litigation when irreparable harm has been established.

The EPA's objection to an injunction appears to be based, to a large extent, on the potential for interference with future work at a polluted site. But that possibility exists in every case in which the agency brings its cost-recovery action before conclusion of the work to be performed at the site.

It is clear that if a court finds that an aspect of the response action already completed was contrary to the National Contingency Plan, the judgment could not include the expenses attributable to that particular activity. It would be highly unlikely that the EPA would continue to spend money on that same remedial activity in the future if it knew that the recovery of costs for that work from the responsible party would not be permitted in later suits. Nor is it likely that the EPA would continue its course of action in the face of a court decree that its remedial processes have failed to comply with the law. Thus, future work is affected to the extent that a denial of reimbursement for a particular item is, for all intents and purposes, a finding that a particular aspect of a project violates applicable law.

---

[0] Or sixty days later if compliance with the redundant sixty-day notice provision of section 9659(d)-(e) would be required.

25

Interim judicial review is often advantageous to the EPA. If a court upholds the legality of a response action and the costs thus far incurred, the likelihood of a settlement with a responsible party at the conclusion of the cleanup is substantially increased. On the other hand, if a court finds defects in the EPA's response action, they may be corrected before further unwarranted drains on limited Superfund resources occur -- a result the EPA would no doubt find desirable. A knee-jerk opposition to a reasonable interpretation of the jurisdictional limitations on judicial review in CERCLA is therefore not consistent with the aims of the Act.

Based on our review of the statute, its legislative history, and the procedural posture of this suit, we hold that where a bona fide allegation of irreparable injury to public health or the environment is made, injunctive relief is available in a cost-recovery action under subsection 9613(h)(1).

Our holding does not mean that frivolous litigation will be permitted to delay critical cleanup efforts. Courts must be wary of dilatory tactics by potentially responsible parties who might raise specious allegations of irreparable harm to public health or the environment merely to obtain immediate review. The mere possibility of such abuse, however, does not justify an abdication by the courts of their responsibility to adjudicate legitimate claims of irreparable harm.

Our holding on jurisdiction does not imply that relief must be granted here. We note first that the parties' versions of the facts are in dispute, and perhaps more important,

26

Congress' intention that cleanup not be delayed or diverted by dilatory litigation must be honored. To overcome that admonition, Gamma-Tech, as the alleged responsible party, has the burden to establish that the EPA's choice of remedy was indeed arbitrary and capricious or otherwise contrary to law.

In cases like the one at hand, a reviewing court should give deference to the scientific expertise of the agency. This is not a circumstance where a court is called upon to simply acquiesce in a determination of law; rather, this is a situation where an administrative agency does possess expert knowledge in a factual and scientific field. See Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 103 (1983) ("When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential."); United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1424 (6th Cir. 1991); Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 915 (3d Cir. 1981).

In this connection, it is noteworthy that section 9613(j)(1) provides that judicial review is limited to the administrative record. That section does provide, however, the exception that "[o]therwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court." 42 U.S.C. §9613(j)(1). The district court must, therefore, apply general administrative law in determining whether additional supplementary information should be added to the court record.

27

Because we have concluded that in the circumstances of a case like this, a district court does have jurisdiction to consider property owners' allegations of irreparable harm, we need not address the due process issue.

### III.

Gamma-Tech has also challenged the district court's order denying a motion to file certain pleadings after the dates specified in the pre-trial order had passed. As we said in Kershner v. Mazurkiewicz, 670 F.2d 440, 449 (3d Cir. 1982), our scope of review under 28 U.S.C. § 1292(a)(1) is limited to issues that are "inextricably bound" to the grant or denial of a preliminary injunction. A court's order enforcing a pre-trial time table does not fall within that category. Therefore, we will not review the court's order at this time.

Accordingly, the order of the district court will be reversed insofar as the court held that it had no jurisdiction to review the contentions of irreparable harm and the request for an

injunction.  The case will be remanded for further proceedings consistent with this opinion.

United States v. Princeton Gamma-Tech, Inc., No. 93-5252.

NYGAARD, Circuit Judge, concurring:

I agree with the majority that the district court had, and we have jurisdiction under 42 U.S.C. § 9613(h)(1). I reach this conclusion because I think it would be anomalous to say, for example, that because the remedy it chose was arbitrary and capricious, the EPA could not recover in a cost recovery action for wells already drilled, but the propriety of its decision regarding all the future wells in the same response phase would not yet be ripe for review. It seems to me that when the EPA opens the door by bringing a cost recovery suit while a response action remains in progress, common sense and judicial economy require us to review both the completed work and those similar portions of the response phase that are either planned or partially completed.[0]

I part company with the majority, however, on the issue of whether the citizens' suit provision codified at section 9613(h)(4) provides an additional and independent basis for federal jurisdiction. The majority suggests that whenever irreparable harm to the environment is alleged, jurisdiction for

---

[0]I doubt, however, whether we would have jurisdiction to review future planned phases of a cleanup where funds have not yet been expended. In such a case, it seems likely that Congress only intended that those phases of the cleanup in progress or already completed would be ripe for review in federal court. See United States v. Charles George Trucking Co., 682 F. Supp. 1260, 1272 (D. Mass. 1988); United States v. Mottolo, Nos. 83-547-D, 84-80-D (D.N.H. Dec. 17, 1992).

30

judicial review is established by that subsection.  To the extent, of course, that section 9613(h)(1) independently provides a source of jurisdiction, the question of whether jurisdiction is also present under section 9613(h)(4) is unnecessary to the result the majority reaches and its observations regarding that subsection are dicta.

I would not reach the issue of jurisdiction under section 9613(h)(4) because I believe Gamma-Tech clearly waived it at oral argument in the following exchange:

> MR. NUCCIARONE:  This is not -- the presentation by [Gamma-Tech] is not founded on the citizens' suit provision, Your Honor.
> . . .
>
> THE COURT: It is not?
>
> MR. NUCCIARONE: It is not.  And that is an erroneous analysis that Judge Fisher made, Your Honor.  So you are . . .
>
> THE COURT: So you were alleging jurisdiction only under the reimbursement suit?
>
> MR. NUCCIARONE: Correct.  And that is why the cases the government relies on are of little aid to this court.

Moreover, it is undisputed that Gamma-Tech has not complied with the requirements of CERCLA section 9659(d)(1), which provides that a citizens' suit may not be brought until sixty days after the plaintiff has notified the violators of the Act and both the federal and state governments.  Because this notice is lacking, there is simply no jurisdiction under the citizens' suit provision.  See Boarhead Corp. v. Erickson, 923 F.2d 1011, 1019 n.13 (3d Cir. 1991).  And while it might be

31

argued that because the EPA has already filed a cost recovery action the notice provision would be superfluous, courts have interpreted the requirement of notice in environmental actions strictly.

In <u>Hallstrom v. Tillamook County</u>, 493 U.S. 20, 110 S. Ct. 304 (1989), certain property owners sued against their county government, alleging that the county's sanitary landfill violated the Resource Conservation and Recovery Act (RCRA). They failed, however, to give the notice required by the statute. The district court held that by notifying the state and federal agencies one day after the defendant moved for summary judgment, the plaintiff cured any defect in notice. The Supreme Court, however, after noting that a variety of environmental statutes contain similar provisions, disagreed:

> [T]he notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion.

<u>Id.</u> at 31, 110 S. Ct. at 311.

Likewise, in <u>Greene v. Reilly</u>, 956 F.2d 593 (6th Cir. 1992), the plaintiff sued under the Clean Water Act. Although he did notify the EPA that he considered it in violation of the Act, the plaintiff did not formally threaten to sue. The Court of Appeals for the Sixth Circuit, although acknowledging that the EPA had <u>some</u> notice of the violation and was aware of the situation generally, nevertheless held that noncompliance with the formal notice requirement barred the suit. <u>Id.</u> at 594.

32

Accordingly, I am convinced that the federal courts do not have jurisdiction to the extent this case is argued as a citizens' suit.

Moreover, even if the citizens' suit were not barred by waiver and procedural default, I do not believe that section 9613(h)(4) provides jurisdiction until the remedial work complained of is actually completed. Every United States Court of Appeals that has construed this section has so held. These holdings are based on a textual analysis of the statute, which refers in the past tense to removal or remedial action taken or secured, and on CERCLA's legislative history. See Arkansas Peace Center v. Arkansas Dep't of Pollution Control & Ecology, 999 F.2d 1212, 1216-17 (8th Cir. 1993) (discussing cases), cert. denied, 114 S. Ct. 1397 (1994); North Shore Gas Co v. Environmental Protection Agency, 930 F.2d 1239, 1244-45 (7th Cir. 1991); Schalk v. Reilly, 900 F.2d 1091, 1095 (7th Cir.), cert. denied, 498 U.S. 981, 111 S. Ct. 509 (1990); State of Alabama v. United States Environmental Protection Agency, 871 F.2d 1548, 1557-58 (11th Cir.), cert. denied, 493 U.S. 991, 110 S. Ct. 538 (1989).[0]

[0]See also City of Eureka v. United States, 770 F. Supp. 500, 502 (E.D. Mo. 1991); Neighborhood Toxic Cleanup Emergency v. Reilly, 716 F. Supp. 828, 830-34 (D.N.J. 1989) (discussing cases); Frey v. Thomas, No. IP 88-948-C, 19 Envtl. L. Rep. 20383, 1988 U.S. Dist LEXIS 16,967, 1988 WL 20383 (S.D. Ind. Dec. 6, 1988). One district court within our circuit, however, has expressed a contrary view. In Cabot Corp. v. United States Environmental Protection Agency, 677 F. Supp. 823 (E.D. Pa. 1988), PRPs sued the EPA over a remediation plan. The district court first held that section 9613(h)(1) barred review until EPA filed an action to recover costs, then held that section 9613(h)(4) must be read as encompassing only those citizens' suits that would not otherwise be deferred by the other portions of section 9613(h), including section 9613(h)(1). Id. at 828. Then, in dictum, it

33

Beyond the plain language of the statute, a section such as 9613(h) that withdraws federal jurisdiction from suits brought against the United States is essentially a reassertion of sovereign immunity, and it is a basic principle of law that "[w]aivers of immunity must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S. Ct. 3274, 3278 (1983) (citations and internal quotation marks omitted); see Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1385 (5th Cir. 1989) (applying Sierra Club to section 9613). Thus, even if the plain language of the statute were equivocal on the timing of review, it would still not support a waiver of sovereign immunity, and we should not imply one unless the legislative history in favor of such a construction is compelling. Cf. Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 912 (3d Cir. 1990).

The legislative history of CERCLA, however, hardly compels the conclusion that Congress intended the broad judicial review that the majority holds is available. Instead, as the majority purports to recognize, "Congress was anxious to safeguard EPA removal efforts from delay resulting from litigation brought by potentially responsible parties." Majority

---

went on to discuss genuine citizens' suits and opined that such actions may be brought even before the proposed remedy is implemented, based largely on its view of CERCLA's legislative history. Id. at 828–29. Notably, however, the Neighborhood Toxic court, as well as the courts in Alabama and Frey, rejected Cabot and its reading of the legislative history. As I discuss infra, so do I.

34

typescript at 5. That desire was equally present for the circumstances presented here.

In considering and reporting out H.R. 2817, which was later incorporated into H.R. 2005 and passed, the Committee on Energy and Commerce said of what is now section 9613(h):

> The section is intended to codify the current position of the Administrator and the Department of Justice with respect to preenforcement review: there is no right of judicial review of the Administrator's selection and implementation of response actions until after the response action [sic] have been completed to their completion.

H.R. Rep. No. 253(I), 99th Cong., 1st Sess. 81 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2863. Indeed, a thorough review of the legislative history reveals no evidence whatsoever that Congress intended anything other than a judicial review of completed response actions under the citizens' suit provision. See H.R. Rep. No. 253(III), 99th Cong., 1st Sess. 22-23 (1985), reprinted in 1986 U.S.C.C.A.N. 3038, 3045-46 (House Committee on the Judiciary, emphasizing that judicial review must be postponed until after the response action is taken and completed); H.R. Rep. No. 253(V), 99th Cong., 1st Sess. 25-26 (1985), reprinted in 1986 U.S.C.C.A.N. 3124, 3148-49 (House Committee on Public Works and Transportation, referring to actions taken in past tense).

In fact, the Conference Report accompanying the Superfund Amendments of 1986, which is the most persuasive evidence of congressional intent,[0] states, in pertinent part:

---

[0] See, e.g., Resolution Trust Corp. v. Gallagher, 10 F.3d 416, 421 (7th Cir. 1993); RJR Nabisco, Inc. v. United States, 955 F.2d 1457, 1462 (11th Cir. 1992); Demby v. Schweiker, 671 F.2d 507, 510 (D.C. Cir. 1981) (opinion announcing judgment of court).

35

> [A]n action . . . would lie following
> completion of each distinct and separable
> phase of the cleanup.  For example, a surface
> cleanup could be challenged as violating the
> standards or requirements of the Act once all
> the activities set forth in the Record of
> Decision for the surface cleanup phase have
> been completed. . . . Any challenge under
> this provision to a completed stage of a
> response action shall not interfere with
> those stages of the response action which
> have not been completed.

H.R. Conf. Rep. No. 99-962, 99th Cong., 2d Sess. 223-24 (1986), reprinted in 1986 U.S.C.C.A.N. 3276, 3316-17.

Rather than coming to grips with the conference report and the reports of the standing committees that reported out the CERCLA amendments, the majority seeks support in conflicting statements made on the House and Senate floors by individual conferees.  See majority typescript at 15-17.  Yet, it is a well-established principle of statutory interpretation that contradictory floor statements by individual members, even the sponsors of the bill, are of extremely limited authority and cannot override the committee and conference reports.  See Brock v. Pierce County, 476 U.S. 253, 263, 106 S. Ct. 1834, 1840-41 (1986); Garcia v. United States, 469 U.S. 70, 76, 105 S. Ct. 479, 483 (1984); Chrysler Corp. v. Brown, 441 U.S. 281, 311, 99 S. Ct. 1705, 1722 (1979).

The majority nevertheless concludes that absent a jurisdictional exception where irreparable harm is alleged, the citizens' suit provision would be rendered a nullity and an absurdity.  Majority typescript at 18.  Even if that is so, it is clear from the legislative history that Congress carefully

36

considered the timing of review issue and was well aware that environmental contamination could irreparably damage both the environment and human health. Nevertheless, it chose not to provide a jurisdictional exception for irreparable harm. <u>See</u> <u>Hanford Downwinders Coalition, Inc. v. Dowdle</u>, 841 F. Supp 1050, 1062 (E.D. Wash. 1993). And while Congress' decision on that issue might not comport with the policy views of certain members of the public and the judiciary, it is simply not our function as a reviewing court to act as a super-legislature and second-guess the policy choices Congress made.[0]

I therefore respectfully concur in the judgment.

---

[0] Moreover, as the <u>Dowdle</u> court pointed out, <u>id.</u>, irreparable harm, whether explicitly asserted or not, was present on the facts of <u>Arkansas Peace Center</u>, <u>Schalk</u> and <u>Alabama</u>, cited by the majority as having only "superficial pertinency." Majority transcript at 13-14. Yet, each of these courts held that judicial review was not available under section 9613(h)(4). Thus, for the majority's view of section 9613(h)(4) to be correct, these decisions by three other courts of appeal would have to be repudiated outright.